In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3307

UCHE P. MORDI,

*Plaintiff-Appellant,*

*v.*

TODD ZEIGLER, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 11-cv-193-MJR — **Michael J. Reagan**, *Chief Judge.*

ARGUED APRIL 20, 2017 — DECIDED SEPTEMBER 5, 2017

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK,
*Circuit Judges.*

WOOD, *Chief Judge.* In January 2012, proceeding *pro se*,
Uche P. Mordi, a Nigerian national, filed a civil rights action
under 42 U.S.C. § 1983 against local and state officials for
alleged violations associated with his 2009 arrest in southern
Illinois. The district court screened Mordi's civil rights
complaint, as required by 28 U.S.C. § 1915A. It dismissed with
prejudice all claims except for those against three of the

officers; the surviving claims relied on the Vienna Convention on Consular Relations, art. 36.1(b), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 ("the Vienna Convention"). After the district court rejected the officers' assertion of qualified immunity on the Vienna Convention claims, they took an interlocutory appeal to this court. We ruled that all three—Todd Zeigler, Greg Chance, and Gregg Healey—were entitled to qualified immunity from Mordi's claim that they violated his rights under the Vienna Convention, and we remanded "with instructions to dismiss the action" against these three. *Mordi v. Zeigler*, 770 F.3d 1161, 1167 (7th Cir. 2014).

On November 21, 2014, the district court dismissed the Vienna Convention claims against Zeigler, Chance, and Healey, and entered final judgment on November 24, thus disposing of all claims against all parties brought by Mordi's January 2012 complaint. In an effort to revive his other theories for recovery, Mordi filed a motion on December 18, 2014, requesting that the district court revisit its section 1915A threshold screening order. The district court denied Mordi's motion, and Mordi has now brought a timely appeal from that decision. With the Vienna Convention claims off the table, Mordi now argues that Officers Zeigler and Nathan Zerrusen violated his Fourth Amendment rights when they stopped the car he was driving. They did so, Mordi asserts, not because they had probable cause for the traffic stop, but because they were engaged in impermissible racial profiling. In addition, he argues, the officers unlawfully prolonged the stop so that they could bring a drug-sniffing dog to the car. We conclude that the district court acted prematurely, and that Mordi's Fourth Amendment claim may move forward.

**I**

Our review of the underlying facts can be brief. At approximately 1:10 p.m. on March 12, 2009, Mordi and a passenger, Aderinola Otesile, were traveling southbound on Interstate 57 in southern Illinois. They passed two Illinois state police cars parked in the median, one facing northbound, the other southbound. About ten minutes later, the northbound-facing car, driven by State Trooper Zeigler, pulled out into the southbound lane, approached Mordi's car, and signaled for him to pull over.

Mordi complied immediately. Zeigler approached the vehicle on the passenger side and asked why the license plate was not on the front bumper, but instead was inside on the windshield. Mordi explained that the grille and bumper were cracked, and so he was not able to attach the plate to the front bumper. Zeigler also told him that the hood was not closed all the way; Mordi countered that the space between the hood and the body of the car was less than an inch.

After that exchange, Zeigler asked Mordi for his license and insurance, and Mordi furnished both. Zeigler also asked for Otesile's identification. At that point Zeigler asked Mordi to get into the squad car; Mordi did so. By now Zeigler knew that Mordi was a student at Southern Illinois University, and so he asked Mordi questions about the school, his travel plans, and similar things, while he checked out Mordi's identification. Based on the results, Zeigler asked Mordi about an outstanding warrant for failure to appear in a misdemeanor marijuana case from White County, Illinois. Mordi said he knew nothing about any warrant, but he admitted that he had paid fines and complied with an unspecified disposition related to

such an offense. He then commented that he "could only im-
agine a DUI case pending, if any."

At some point Officer Zerrusen had joined the group.
Mordi remained in the squad car for a few minutes while
Zeigler and Zerrusen questioned Otesile, who was still sitting
in Mordi's car. Zeigler returned to Mordi and told him that
"everything was good," and that he would issue Mordi a
warning citation. He did so, gave it to Mordi to sign, and
returned Mordi's identification to him. But the encounter was
not yet over. Zeigler then asked Mordi if there were drugs in
the car, and Mordi responded (somewhat equivocally) "there
shouldn't be." Zeigler asked if he could search the car, but
Mordi said no, several times. Some 20 minutes or so into the
stop, at 1:34 p.m., Zeigler radioed for Rob Rich, of the
Effingham County Sheriff's Department, to come to the car
with his drug-sniffing dog. Rich arrived ten minutes later; the
dog sniffed the car; and it alerted. The officers ordered Mordi
and Otesile out of the car, searched it, and found crack cocaine
in Mordi's duffle bag in the back seat.

Mordi and Otesile were taken separately to the state police
station in Effingham. Eventually, however, Mordi was
charged with, and pleaded guilty to, federal drug charges for
possessing with intent to distribute the cocaine. He is now
serving a 120-month sentence for that conviction.

## II

Mordi brought the present case under 42 U.S.C. § 1983 be-
cause he believes that the officers involved in his stop and de-
tention violated his Fourth Amendment rights. The district
court received the complaint on March 14, 2011. It is not late,
however, because Mordi was incarcerated at the time, and he

mailed his complaint from the prison on March 11, 2011. That gives him the benefit of the prison mailbox rule, see *Taylor v. Brown*, 787 F.3d 851, 858–59 (7th Cir. 2015), under which his complaint is treated as filed within the two-year limit. See 735 ILCS 5/13-202. The district court dismissed with prejudice some, but not all, counts of Mordi's complaint. Its decision to deny qualified immunity to some of the defendants was immediately appealable. See *Behrens v. Pelletier*, 516 U.S. 299 (1996). As we noted earlier, we concluded that they were entitled to qualified immunity and in 2014 remanded the case for further proceedings.

More than two years earlier, on January 19, 2012, the district court entered a screening order pursuant to section 1915A. Its order organized the claims presented in Mordi's *pro se* civil rights complaint into separate counts and dismissed with prejudice all but the Vienna Convention claim against Zeigler, Chance, and Healey. (No Vienna Convention claims against other defendants were preserved.) This included a rejection of Mordi's assertion that the initial stop violated his Fourth Amendment rights. The court gave this point short shrift in its section 1915A screening order, which in relevant part read as follows:

> At the outset, it must be stated that many of Plaintiff's allegations of unconstitutional conduct by the arresting and investigating officers, which led to his conviction, cannot be addressed in the context of a § 1983 action. Indeed, Plaintiff's complaint never requests the Court to invalidate his conviction. However, Plaintiff claims that the original traffic stop was a result of improper "profiling," the stop was illegally prolonged in

order to conduct a canine sniff search, he was pressured to waive his *Miranda* rights, his interrogation was unduly coercive, and the county prosecutors acted improperly in turning him over to the federal prosecutor. Such matters are not the proper subject of a civil rights action under § 1983. *See Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (release from custody cannot be sought in a § 1983 action). Challenges to the constitutionality of a conviction must be raised, if at all, on direct appeal from the conviction or in a proper post-conviction or habeas action, if Plaintiff's right to raise such matters was not waived by his guilty plea, and if any of these actions could be timely filed. Accordingly, these allegations will not be further addressed in this proceeding, and this count shall be dismissed with prejudice.

Mordi sought reconsideration of this order, but on September 17, 2015, the district court denied that motion. In the present appeal, with the assistance of appointed counsel, he argues only that the district court erred in rejecting his Fourth Amendment claims against Zeigler and Zerrusen.

## III

The distinction on which the district court relied between a lawsuit that would undermine a conviction, and a lawsuit focusing on a civil rights violation, is a valid one. See *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck*, as the Supreme Court later explained in *Wallace v. Kato*, 549 U.S. 384 (2007), held that a prisoner may not raise a claim under section 1983 "which, if true, would have established the invalidity of his outstanding conviction." *Id.* at 392. In such a case, the prisoner's only recourse is either

direct appeal or a petition for a writ of habeas corpus; if the time has run for either or both, the prisoner is out of luck, at least until he is no longer in custody and possibly even then. See *Whitfield v. Howard*, 852 F.3d 656 (7th Cir. 2017).

A plaintiff is the master of his own complaint, however, and so we must examine what Mordi is asking for, before we can decide whether he may pursue his section 1983 action or if the *Heck* line of cases stands in his way. See *Gilbert v. Cook*, 512 F.3d 899, 901–02 (7th Cir. 2008). As the Supreme Court put it in *Muhammad v. Close,* 540 U.S. 749, 751 (2004), "*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not … implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." In addition, "when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Haring v. Prosise*, 462 U.S. 306, 321 (1983). Mordi insists that he is complaining only about the improper racial profiling that led to his traffic stop, and about the officers' decision to prolong his detention while they waited for the drug-sniffing dog to arrive. If he were to prevail on either or both of these points, his conviction would be unaffected. We recognized as much in *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), where we wrote:

> Many claims that concern how police conduct searches or arrests are compatible with a conviction. For example, an arrest without probable cause violates the fourth amendment but does not imply the invalidity of a conviction, because courts do not "suppress the

> body" of the accused. See *United States v. Alvarez–Machain,* 504 U.S. 655 (1992). Similarly, a court's decision not to suppress illegally seized evidence can lead to a conviction without blotting out a § 1983 challenge to the seizure.

*Id.* at 363–64. We therefore held in *Evans* that the plaintiff was "entitled to an opportunity to prove that the defendants used unreasonable force during and after his arrest." *Id.* at 364. Mordi makes a similar point: even if he were to prevail on his racial-profiling and prolonged-detention arguments, the discovery of the cocaine found within the car would be just as secure, his guilty plea would stand, and his conviction would, too. All he can hope for in his Fourth Amendment case would be some form of damages for the loss of his time and the dignitary insult inflicted by racial discrimination.

Despite the fact that Mordi insisted in his complaint that he was not challenging his conviction (a point that the district court recognized), the state urges us to read the complaint as if he were. There is an exception to the *Heck* bar, under which a challenge may be brought to actions such as searches and seizures or a false arrest that do not have any necessary effect on the validity of a conviction. See *Wallace*, 549 U.S. at 397; see also *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008), *cert. denied*, 556 U.S. 1235 (2009) ("Even if no conviction could have been obtained in the absence of the violation, the Supreme Court has held that, unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit.").

The state acknowledges the *Wallace* exception, but, it argues, there is an exception to that exception. The second-layer

exception comes into play if a plaintiff's allegations *necessarily* imply the invalidity of a conviction (even one based on a guilty plea); in that case, it says, the *Heck* bar springs back into existence. It rests its argument on *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003), where we held that defendant Okoro's effort to complain about a search was just a disguised way of asserting his innocence. Okoro wanted to argue that the police, who were searching for heroin, had actually stolen gems and cash from him. *Id.* at 489. We found that Okoro was really raising a fundamental argument about the evidence that was used to convict him—that there were no drugs and that he was framed. If a jury believed those allegations, the basis of his conviction would have been wiped out. In keeping with our normal practice of looking beyond labels and judging cases on the basis of their substance, we held that Okoro's attempted section 1983 action was *Heck*-barred.

The worst one can say about Mordi's case is that he made a few half-hearted attempts to assert his innocence between the time the police arrested him and the time he found himself facing federal charges. But those efforts did not make their way into his complaint as anything but background information or an account of what he said at the time. Unlike Okoro, Mordi is not asking for any form of relief that would undermine his guilty plea or his conviction. He is raising a civil rights complaint, and he is raising the type of complaint that *Wallace* says accrues at the time of the stop and arrest. In addition, even if Mordi filed a complaint that included some *Heck*-barred contentions and other cognizable arguments, we have held that the proper response is not to toss the entire complaint. Instead, the judge must carve off any *Heck*-barred contentions and proceed with what remains. *Evans*, 603 F.3d at 364; *Gilbert*, 512 F.3d at 902.

**IV**

The district court cut off this case at the screening stage, based on a finding that it could not properly proceed under section 1983. This was in error, and so we REVERSE and REMAND for further proceedings consistent with this opinion.