In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1907

SHARON MITCHELL,

*Plaintiff-Appellant,*

*v.*

CITY OF ELGIN, ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 3457 — **John Robert Blakey**, *Judge.*

ARGUED JULY 6, 2017 — DECIDED JANUARY 2, 2019

Before KANNE and SYKES, *Circuit Judges.*[*]

SYKES, *Circuit Judge.* Sharon Mitchell enrolled in an online criminal-justice course offered by the Elgin Community College. Her participation in the class did not go smoothly. The instructor—an officer of the Elgin Police Department—

---

[*]Circuit Judge Richard A. Posner participated in the initial stages of this appeal but retired from the court on September 2, 2017. This case was resolved by a quorum of the panel under 28 U.S.C. § 46(d).

eventually advised her that she was failing the course. Soon after, the Elgin Police Department received anonymous threats and a harassing email targeting the officer. A second officer swore out a criminal complaint accusing Mitchell of electronic communication harassment. She was arrested, immediately bonded out, and two years later was acquitted after a brief bench trial. Mitchell then sued the City of Elgin and several of its officers seeking damages for wrongful prosecution under various federal and state legal theories.

A district judge dismissed the case, concluding that the federal claims were either untimely or not cognizable and relinquishing supplemental jurisdiction over the state-law claims. Mitchell appealed. We heard argument in July 2017 but held the case to await further developments in the wake of the Supreme Court's decision in *Manuel v. City of Joliet* ("*Manuel I*"), 137 S. Ct. 911 (2017), which overturned the circuit caselaw that defeated Mitchell's Fourth Amendment claim below. *Manuel I* clarified that pretrial detention without probable cause is actionable under 42 U.S.C. § 1983 as a violation of the Fourth Amendment. *Id*. at 920. But the Court did not decide when the claim accrues. Instead, the Court left that issue open for this court to decide on remand. *Id.* at 922. In September a panel of this court answered that lingering question, holding that a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends. *Manuel v. City of Joliet* ("*Manuel II*"), 903 F.3d 667, 670 (7th Cir. 2018).

We asked the parties to file position statements addressing whether Mitchell's claim is timely under *Manuel II*. They have done so. Based on the current state of the record and briefing, however, we find ourselves unable to decide the

timeliness question. The parties have not adequately addressed whether and under what circumstances a person who is arrested but released on bond remains "seized" for Fourth Amendment purposes. Moreover, we do not know what conditions of release, if any, were imposed on Mitchell when she bonded out after her arrest. The most we can say at this juncture is that Mitchell *might* have a viable Fourth Amendment claim under *Manuel I* and *II*. We therefore reverse the judgment on that claim alone and remand to the district court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

## I. Background

We take the following factual account from Mitchell's amended complaint. In the fall of 2010, Mitchell enrolled in an online criminal-justice course at Elgin Community College taught by Elgin Police Officer Ana Lalley. Officer Lalley required her students to post responses to discussion topics in an online forum. One topic related to students' attitudes toward law enforcement. Mitchell's posts on this topic were so upsetting to Officer Lalley that she removed them, barred Mitchell from posting in the forum, and informed her that she may have violated school policies regarding student behavior. The friction between the two continued the following semester, and at some point Lalley informed Mitchell that she was failing the course.

In May 2011 the Police Department received two anonymous threats against Officer Lalley. First, Officer Todd Ramljak, another Elgin police officer who also taught at the college, found a document containing threats against Lalley in his school mailbox. Officer Ramljak filed a report about the incident. Two weeks later Officer Kevin Senne filed a

supplement to Ramljak's report stating that someone had sent a harassing email to Lalley's college email account. Lalley identified Mitchell as the only possible source of the threats and the harassing email. Sergeant Danner (first name unknown) approved and signed these reports. In August 2011 Senne filed a criminal complaint accusing Mitchell of electronic communication harassment. A warrant for her arrest followed, and on August 17, 2011, Mitchell was arrested and transferred to the custody of the Kane County Sheriff's Department. She posted a $250 bond and was released that same day. The amended complaint is silent about the conditions of her release.

The case dragged on for two years. Mitchell was offered several plea deals but declined them all. On August 22, 2013, she was acquitted after a one-day bench trial.

On May 23, 2014, Mitchell filed suit pro se against the City of Elgin and several police officers seeking damages under § 1983 for violation of her rights under the First Amendment, the Fourth Amendment, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. She also asserted various claims under state law. The district judge dismissed the federal claims and most of the state claims but allowed Mitchell to go forward on a state-law malicious-prosecution claim against Officer Senne and Sergeant Danner and an indemnification claim against the City. The judge recruited pro bono counsel to assist Mitchell on these remaining claims.

The defendants moved to alter the judgment, urging the judge to relinquish supplemental jurisdiction over the state-law claims since no federal claim remained. Through newly recruited counsel, Mitchell moved for an extension of time to

respond to the motion and to seek leave to file a second amended complaint. The judge ordered counsel to identify the claims he proposed to add in an amended complaint.

Mitchell's counsel responded as directed. As relevant here, counsel explained that he sought leave to replead the § 1983 claim for "malicious prosecution," framing it as a violation of the Fourth Amendment or the Due Process Clause. The judge declined to allow the proposed amendment, relying on longstanding circuit precedent holding that the Fourth Amendment has no role to play after the initiation of formal legal process (e.g., an arrest warrant or a probable-cause hearing) and that the existence of adequate remedies under Illinois law foreclosed a federal "malicious prosecution" claim under the Due Process Clause. *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001). The judge then reconsidered his earlier decision to retain supplemental jurisdiction over the state-law claims that had survived dismissal on the pleadings. He reversed course, relinquished supplemental jurisdiction, and entered final judgment for the defendants. Mitchell appealed.

## II. Analysis

The Supreme Court's decision in *Manuel I* arrived just as the briefing of this appeal was wrapping up, substantially altering the legal framework of Mitchell's case. *Manuel I* abrogated our circuit precedent foreclosing Fourth Amendment claims for unlawful pretrial detention after the initiation of formal legal process. The Court held that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel I*, 137 S. Ct. at 918.

Discarding the "malicious prosecution" analogy, the Court grounded its analysis in the basic Fourth Amendment principle that law enforcement must have probable cause to detain a person on suspicion of a crime:

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it can also occur when legal process itself goes wrong—when, for example, a judge's proba-ble-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally ad-equate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause require-ment. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow … convert that claim into one founded on the Due Process Clause.

*Id.* at 918–19 (citations omitted). So it's now clear that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920.

*Manuel I* recasts the legal framework for part of Mitchell's case. To the extent that her claim is one for unlawful deten-tion without probable cause, it may survive beyond the pleading stage—*provided*, however, that she sued on time. *Manuel I* did not decide when the claim accrues. Instead, the Court returned Elijah Manuel's case to this court to decide that question. *Id.* at 921–22. On remand the *Manuel* panel

reheard the case and recently held that a claim for unlawful pretrial detention accrues when the detention ceases. *Manuel II*, 903 F.3d at 670.

In light of these developments, we asked the parties to address the timeliness of Mitchell's Fourth Amendment claim under *Manuel II*. A two-year limitations period, borrowed from state law, governs § 1983 claims in Illinois, *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007), but the parties disagree about when that two-year clock started to run.

Mitchell contends that her Fourth Amendment claim accrued on August 22, 2013, when the state judge entered a verdict of acquittal in her criminal case. She filed suit on May 23, 2014, less than two years later, so if she is correct on the accrual question, her claim is timely.

At first blush Mitchell's position is hard to square with *Manuel II*, which as we've noted held that a Fourth Amendment claim for unlawful pretrial detention accrues when the *detention* ends, *not* when the *prosecution* ends. Mitchell was not detained beyond her initial arrest; she bonded out the same day and suffered no further pretrial detention. To overcome this impediment, Mitchell argues that despite her pretrial release, she remained "in custody" until she was exonerated at trial. For support she draws on the law of habeas corpus, which considers a person who is released on bail to be "in custody" for purposes of testing the legality of the custody via the writ. *See Burris v. Ryan*, 397 F.2d 553, 555 (7th Cir. 1968) ("[O]ne under arrest, but at large on bail, is entitled to a writ the same as if the arrest was accompanied by actual imprisonment.") (quoting *Mackenzie v. Barrett*, 141 F. 964, 966 (7th Cir. 1905))).

We're skeptical about the habeas analogy. The long and complex history of habeas corpus in England reveals that the writ could issue even when the petitioner found himself in "something less than close physical confinement." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963). We hesitate to apply the lessons of that historical record beyond its own context. Moreover, there are important differences between modern habeas corpus and the protections of the Fourth Amendment. Habeas corpus has expanded into a statutory framework for federal-court review of state convictions tainted by egregious federal constitutional error. The Fourth Amendment, by contrast, guards against unreasonable seizures. And seizures, whether discrete or continuous, are *events*—not outcomes. Because these bodies of law address different wrongs, we're not ready to assume that "custody" in the former context necessarily constitutes "seizure" in the latter.

The defendants posit that under *Manuel II* Mitchell's seizure ended when she was released on bond immediately after her arrest on August 17, 2011. This suit came more than two years later, so if they're right, Mitchell's Fourth Amendment claim is untimely.

This argument overlooks the possibility that pretrial release might be construed as a "seizure" for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty. Several of our sister circuits have adopted this approach. *See, e.g.*, *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (explaining that a seizure occurred where the plaintiff had to "obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information"), *abrogat-*

*ed on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Two circuits have even gone so far as to characterize the obligation to appear in court, standing alone, as an ongoing seizure. *Black v. Montgomery County*, 835 F.3d 358, 366–67 (3d Cir. 2016); *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013). This appears to be a minority position, however. *See Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001) ("[R]un-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of the term [seizure]."); *see also Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010); *Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004); *Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018). In any event, there is out-of-circuit support for the proposition that the concept of "seizure" under the Fourth Amendment extends beyond physical detention.

We haven't given a Fourth Amendment "seizure" quite such a broad construction. *See Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (characterizing a summons, travel restriction, and interview requirement as "insufficient restraints on freedom of movement to constitute a seizure"). And until the Supreme Court spoke in *Manuel I*, two aspects of our Fourth Amendment jurisprudence made the prospect of a "nondetention seizure" quite unlikely in this circuit. First, we rejected the concept of a continuous seizure. *See Welton v. Anderson*, 770 F.3d 670, 675 (7th Cir. 2014) (collecting cases). Second, we characterized Fourth Amendment claims as only viable "up to the point of arraignment." *Id.* The latter proposition was plainly abrogated in *Manuel I*. But the effect of *Manuel I* on the Fourth Amendment status of pretrial release conditions is less certain. The panel in *Manuel II* had no occasion to address the question because Elijah

Manuel was held in jail until the charges against him were dropped.

We have misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a "seizure" for Fourth Amendment purposes. Converting every traffic ticket into a nascent Fourth Amendment claim strikes us as an aggressive reading of the constitutional text. And the canonical test for seizures remains whether a state official has "terminate[d] or re-strain[ed]" an individual's "freedom of movement" such that "a reasonable person would have believed that he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 254–55 (2007) (citations omitted). Whether pretrial-release conditions satisfy that standard—and if so, which ones—will have to be resolved in this circuit in the wake of *Manuel I* and *II*.

On this record, however, we are unable to decide the matter. The parties haven't briefed the legal question of the scope of a Fourth Amendment "seizure" in this context. And even if we decided to reach the merits, we lack sufficient information about Mitchell's conditions of release to deter-mine if she remained "seized" while on pretrial release. In her supplemental filing, Mitchell simply pointed to the bond conditions imposed by Illinois law. *See* 725 ILL. COMP. STAT. 5/110-10(a)(1)–(3) (2006) (requiring a person released on bond to attend a court hearing and seek permission before leaving the state). She also noted that a judge may impose additional release conditions. But we don't know whether the judge did so in her case.

For now, all we can say is that in light of *Manuel I*, Mitchell's Fourth Amendment claim was wrongly dismissed based on our now-abrogated circuit caselaw. But the timeli-

ness of the claim remains an open question, and gaps in the briefing and record preclude our ability to answer it. We therefore reverse and remand for further proceedings consistent with this opinion.

Mitchell's remaining arguments require little comment. She raises procedural objections to the judge's handling of her motion for an extension of time to seek leave to file a second amended complaint. With the exception of the Fourth Amendment claim, we find no abuse of discretion.[1]

For the foregoing reasons and only on the Fourth Amendment claim, we REVERSE the judgment and REMAND for further proceedings consistent with this opinion. In all other respects, the judgment is AFFIRMED.

---

[1] Mitchell's counsel identified two other claims as potential candidates for inclusion in an amended complaint: (1) a claim for conspiracy to violate Mitchell's rights under the Equal Protection Clause, 42 U.S.C. § 1985(3); and (2) an additional § 1983 claim for "abuse of process" in violation of the First Amendment. Mitchell has not seriously pressed these claims on appeal.