In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2725

KEITH SMITH,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 18-cv-4918 — **Virginia M. Kendall**, *Judge.*

ARGUED NOVEMBER 13, 2020 — DECIDED JUNE 28, 2021

Before FLAUM, ROVNER, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* "Better late than never" is not a
phrase typically heard in a federal courthouse. Even meritorious claims brought outside their statute of limitations must be
dismissed. Keith Smith sued the City of Chicago and two of
its police officers under 42 U.S.C. § 1983 for violating the
Fourth Amendment, claiming unlawful pretrial detention
based on fabricated evidence. Rather than resolve the appeal
on the merits, we must decide whether Smith timely filed his

complaint, a question which depends on when his claim accrued. Smith argues that happened when he was acquitted at trial. If it did, then his complaint was timely. But our precedent establishes that a Fourth Amendment claim such as Smith's accrues when he is released from detention, and the Supreme Court's recent decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), has not disturbed that conclusion. Smith was released on bond on March 29, 2014, so if his claim accrued then, under the applicable two-year limitations period his lawsuit, filed on July 18, 2018, was untimely.

Alternatively, Smith contends his claim was timely because his bond conditions constituted an ongoing Fourth Amendment seizure, so he was not released from custody until he was acquitted. Squarely reaching this issue for the first time in this circuit, we hold that requirements to appear in court for a hearing and to request permission before leaving the state—taken together or separately—do not amount to Fourth Amendment seizures. Smith's accrual date remains the date he was released on bond, and because his claim was untimely, we affirm the district court's dismissal of his complaint.

# I

In September 2013, Chicago Police Officers Ranita Mitchell and Herman Otero stopped a car in which Keith Smith was a passenger.[1] According to Smith, the two officers fabricated a story that, during this stop, he made a "furtive movement" and that the officers found a bullet in the car. The officers

---

[1] We accept as true all material allegations of the complaint and draw all reasonable inferences in plaintiff's favor. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018).

arrested Smith and he was detained for seven months in the Cook County Jail. Smith was released on bond "on or about" March 29, 2014. While on bond, Smith was required to appear in court once per month and to request permission before leaving the State of Illinois. Smith contends his bond conditions diminished his employment prospects and that he experienced financial stress and emotional anxiety over the preparation of his defense. He was acquitted of the charges against him on July 21, 2016.

Smith filed this action against the City and the officers on July 18, 2018. He alleges the officers violated § 1983 by using fabricated evidence to place him in custody in violation of the Fourth Amendment. He brought his claim against the City under *Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658 (1978), and he claims the police department's "code of silence" resulted in his detention.

The district court granted the defendants' motion to dismiss Smith's complaint. The court concluded that Smith's Fourth Amendment claim was time barred because the statute of limitations for his claim was two years and the statute began to run the day Smith was released on bond, March 29, 2014. Because Smith did not file his lawsuit until July 18, 2018, it fell outside the limitations period. The district court also dismissed Smith's claim against the City because he conceded it was intertwined with his allegations against the officers.

Smith moved the district court to reconsider its decision, contending that in *Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019), this court noted the possibility that bond conditions could constitute a Fourth Amendment "seizure." If they did, Smith argued, the statute of limitations would not have started to run until the bond conditions were lifted upon his

acquittal, resulting in a timely claim. But after granting the motion for reconsideration, the district court affirmed its dismissal of Smith's complaint and concluded that his bond conditions were not sufficiently onerous to constitute a seizure. The district court also declined to extend the Supreme Court's holding in *McDonough*—that claims for fabrication of evidence under the due process clause accrue on the favorable termination of the proceedings—to Smith's claims under the Fourth Amendment.

## II

We review de novo the district court's ruling on a motion to dismiss. *Warciak v. Subway Rest., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020).

Smith presents alternative avenues to avoid the district court's conclusion that his Fourth Amendment claim is time barred. The first asks us to overrule the claim accrual rule of *Manuel v. City of Joliet* (*Manuel II*), 903 F.3d 667, 668 (7th Cir. 2018) based on the Supreme Court's decision in *McDonough* and hold that the statute of limitations did not begin to run until Smith's acquittal on July 21, 2016. The second claims that the conditions of Smith's bond constituted a seizure such that he was not released from confinement, and therefore that the limitations period did not begin to run until July 21, 2016.

## A

Although state law determines the length of the statute of limitations for a § 1983 claim, federal law provides when that limitations period begins. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). In Illinois, the limitations period is two years. *See* 735 ILCS 5/13-202; *Manuel II*, 903 F.3d at 668. When Smith's claim accrued is dispositive of his case. If his claim accrued

when he was released on bond, on March 29, 2014, his claim is time barred because he did not file until more than four years later. But if his claim accrued when he was acquitted on July 21, 2016, he filed (just barely) within the limitations period.

In determining when the limitations period began for Smith's Fourth Amendment claims, we do not write on a clean slate. In *Manuel v. City of Joliet* (*Manuel I*), 137 S. Ct. 911, 918–19 (2017), the Supreme Court reversed this court and held that a claim "that a form of legal process resulted in pretrial detention unsupported by probable cause" sounds in the Fourth Amendment. The Court left the accrual-date issue for consideration on remand. *Id*. at 920. In *Manuel II*, this court held that a Fourth Amendment claim for unlawful pretrial detention accrues when the plaintiff is released from custody. *Manuel II*, 903 F.3d at 669. This court reasoned that an analogy to malicious prosecution—where claims accrue after a favorable determination of legal proceedings—was inapt because "the Justices deprecated" that analogy. *Id*. at 670. And because "the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Id*.

The application of *Manuel II* to Smith's claims is straightforward. Assuming for now that Smith's release from custody occurred when he was released on bond, *Manuel II* suggests that Smith's limitations period began to run on March 29, 2014. This would mean Smith's claim is time-barred because he filed this lawsuit more than four years later, on July 18, 2018.

Smith argues that the legal picture is not so clear, however. He contends that the Supreme Court's recent decision in

*McDonough* implicitly overruled *Manuel II*, establishing that the accrual date for Smith's claim occurred at the favorable termination of his legal proceedings, not when he was released on bond. In *McDonough*, the plaintiff brought a § 1983 claim based on the fabrication of evidence used in his prosecution. 139 S. Ct. at 2153. He alleged that a prosecutor used this fabricated evidence to indict him and try him twice, resulting in acquittal. *Id*. The Second Circuit had construed his fabrication claim as alleging a violation of procedural due process under the Fourteenth Amendment and held that the claim accrued when the plaintiff's liberty was first restricted. 139 S. Ct. at 2154; *see also McDonough v. Smith*, 898 F.3d 259, 266 (2d Cir. 2018). The Supreme Court reversed. It assumed that the Second Circuit had properly construed the fabrication claim as a due process claim. 139 S. Ct. at 2155. After this determination, the Court concluded that the common law analogue to the plaintiff's claim was malicious prosecution. *Id*. at 2156. This led the Court to hold that, like a malicious prosecution claim, a due process claim based on fabricated evidence accrues at the favorable termination of the plaintiff's legal proceedings. *Id*. at 2153.

Smith contends his fabricated evidence claim mirrors the one in *McDonough*. According to Smith, *McDonough* established a general rule that all § 1983 claims based on fabrication of evidence accrue at the favorable termination of the proceedings against the plaintiff. For Smith, it follows then that the accrual date for his claims should be when he was acquitted—July 21, 2016.

The "threshold inquiry in a § 1983 suit" is to "identify the specific constitutional right at issue." *Manuel I*, 137 S. Ct. at 920. In *McDonough*, the Court "assume[d] without deciding that the Second Circuit's articulations of the right at issue and

its contours [were] sound" and the Second Circuit had construed the plaintiff's claim as one under the due process clause of the Fourteenth Amendment. 139 S. Ct. at 2155. The Court further noted that it "express[ed] no view as to what other constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence." *Id*. at 2155 n.2.

Smith's unlawful pretrial detention claim does not stem from the Fourteenth Amendment's due process clause, like the claim in *McDonough*, but from the Fourth Amendment.[2] The allegedly fabricated evidence may have led to Smith's pretrial detention, but its use is not a freestanding claim under § 1983. A claim that an official employed fabricated evidence against a plaintiff must be tethered to a specific constitutional provision. *See Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997) ("Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere.") Here, Smith proceeds under the Fourth Amendment. Because the constitutional provisions in *McDonough* differ from those here, *McDonough's* analogy to the tort of malicious prosecution as a rationale for the favorable-termination rule is distinguishable. Indeed, *Manuel II* already rejected that analogy for Fourth Amendment claims,

---

[2] At oral argument in this court, Smith contended his appeal included a due process claim under the Fourteenth Amendment. But to the extent Smith previously advanced such a claim, he disavowed it. In Smith's reply brief on his motion to reconsider in the district court, he conceded that this court's decision in *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019), is "fatal to [his] claim under the due process clause." D.Ct. D.E. 43 n.2. We construe this as an abandonment of a due process claim, and this appeal reviews only Smith's Fourth Amendment claim.

903 F.3d at 670, and *McDonough* does not conflict with that holding.[3]

**B**

Things get more complicated when we examine some of the specific reasoning of *McDonough*. Particularly, the Supreme Court noted that McDonough would have been unable to bring his claims before the favorable termination of legal proceedings because "his claims challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in *Heck [v. Humphrey*, 512 U.S. 477 (1994)] challenged the validity of his conviction." *McDonough* 139 S. Ct. at 2158.

The plaintiff in *Heck* filed a § 1983 claim for damages challenging the legality of various aspects of his arrest, trial, and conviction. *Id*. at 479. The Supreme Court held that the plaintiff's claim was barred because he was still serving the sentence for the conviction he alleged was secured unlawfully. *Id*. at 486–87. *Heck*'s rule, as initially espoused, was that a § 1983 plaintiff could not obtain damages for challenges to conviction or imprisonment, or any actions that would necessarily invalidate a conviction, until the conviction was set aside. *Id*.

The Court refined this principle in *Wallace v. Kato*, 549 U.S. 384, 393 (2007). The plaintiff in *Wallace* brought a § 1983 claim for false arrest and the question before the Court was when

---

[3] Because we follow *Manuel II*, we need not reach the City's argument that a Fourth Amendment claim for unlawful pretrial detention is more analogous to the common law tort of false imprisonment than malicious prosecution. It suffices that *Manuel II* is good law after *McDonough,* and that *Manuel II* rejected the malicious prosecution analogy.

the statute of limitations began to run. *Id*. at 386. Likening his claim to the common law tort of false imprisonment, the Court held that the limitations period began to run when the plaintiff was brought before a judge at the start of legal process, the same time the tort of false imprisonment accrued at common law. *Id*. at 390. The *Heck* rule did not require a later accrual time, the Court noted, because that bar applied only to "extant convictions." *Id*. at 393. If a plaintiff brought a false arrest claim at the start of legal process, the Court reasoned, then that claim would at most call into question an anticipated future—not present—conviction or sentence. *Id*.

*McDonough* appears to expand the reach of the *Heck* bar. The Court recognized that *McDonough* "differ[ed] from *Heck*" because the plaintiff in *McDonough* was acquitted and was not challenging an existing conviction. 139 S. Ct. at 2157. Nevertheless, the Court concluded that the "pragmatic considerations" underlying *Heck* still applied. *Id*. at 2158. These considerations included concerns about parallel federal and state litigation over the validity of the same prosecutions, as well as the prospect of a federal court holding an ongoing state prosecution invalid. *Id*. The Court stated that "some claims do fall outside *Heck's* ambit when a conviction is merely anticipated," but concluded that the plaintiff's claim was one that necessarily called into question the entire state prosecution. *Id*. (internal quotation marks omitted). This meant that *Heck's* concerns would not allow him to bring the claim, and therefore the limitations period could not accrue, until he was acquitted. *Id*. at 2158. After *McDonough*, *Heck* applies not only to a challenge to an extant criminal conviction or sentence, but also to a claim that "necessarily threatens to impugn…the prosecution itself." *McDonough*, 139 S. Ct. at 2159; *see also Savory v. Cannon*, 947 F.3d 409, 417 (7th Cir. 2020).

("There is no logical way to reconcile those claims with a valid conviction. Therefore, *Heck* supplies the rule for accrual of the claim.").

Smith argues that his Fourth Amendment claim would have necessarily impugned his prosecution, urging us to conclude—as the Court did for the plaintiff in *McDonough*—that he could not have brought his claim until the favorable termination of his proceedings. For Smith, this means the statute of limitations could not begin to run before his acquittal. *See Manuel II*, 903 F.3d at 670 ("*Heck* tells us that a claim does not accrue before it is possible to sue on it.").

*Manuel II* does not answer this question on its own, though. There, the plaintiff was released from custody a day after the charges were dropped against him. *Manuel II*, 903 F.3d at 669. Here, even if we assume Smith's custody ended when he was let out on bond, charges remained pending against him. In other words, in *Manuel II*, by the time the plaintiff was released, there was no prosecution that his § 1983 suit could impugn and therefore nothing that could bring the *Heck* rule into play. But here, Smith was still being prosecuted when he was released on bond.

When determining whether the *Heck* bar applies, we must focus on the contours of the constitutional right that provides a plaintiff's claim. "[T]he wrong" Smith alleges here "is the detention rather than the existence of criminal charges." *Id*. at 670. A Fourth Amendment violation can happen when there is an unreasonable search or seizure before the start of the legal process. *See Gysan v. Francisko*, 965 F.3d 567, 571 (7th Cir. 2020) (analyzing traffic stop). But a violation can also occur when "a judge's probable-cause determination is predicated solely on a police officer's false statements." *Lewis v. City of*

*Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (quoting *Manuel I*, 137 S. Ct. at 918–19). And even though it occurred after the start of legal process, like the plaintiff in *Wallace*, Smith alleges he was "confined without constitutionally adequate justification" and the ensuing legal process "has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Id*.

In contrast, *McDonough* involved no detention. Instead, that plaintiff alleged he was generally deprived of liberty without due process. This claimed deprivation was not limited to a probable cause determination by a judge, as it also included the plaintiff's court hearings and trials. *See McDonough*, 139 S. Ct. at 2156 n.4 (describing the plaintiff's liberty deprivation as him being "subject to restrictions on his ability to travel and other restraints not shared by the public generally") (internal quotation marks omitted). In *McDonough*, the plaintiff's claim therefore related directly to the existence of the criminal charges against him and any attack on those charges necessarily impugned a future conviction. This, the Court reasoned, implicated *Heck*. *Id*. at 2159.

Although similarities exist between the due process claim in *McDonough* and the Fourth Amendment claim for unlawful pretrial detention here, the differences are significant enough to warrant dissimilar treatment under *Heck*. As the Court noted in *McDonough*, *Heck* does not apply to claims where a conviction is "merely anticipated." *Id*. at 2157. Smith's claim, like other Fourth Amendment claims, falls within this category; at the time of his release on bond, he had been charged but not convicted. True, the statute of limitations for Smith's Fourth Amendment claim and those the Court in *Wallace* concluded did not violate the *Heck* bar begin to run at different times. *See Wallace*, 549 U.S. at 389–90

(holding that false arrest claims accrue when legal process begins). But this does not undermine the recognition in *Wallace* that Fourth Amendment claims are not subject to the *Heck* bar because they "merely anticipate" convictions and can accrue when the Fourth Amendment harm has ended. *Cf. Rollins v. Willett*, 770 F.3d 575, 577 (7th Cir. 2014) (holding that plaintiff's claim for unlawful seizure was not barred by *Heck*). And although *McDonough* took pains to distinguish *Wallace*, it did not purport to overrule this portion of *Wallace*. *See McDonough*, 139 S. Ct. at 2157. As shown above, the claim the Court faced in *McDonough* would undermine an ongoing prosecution in a way that neither the false arrest claim in *Wallace* nor Smith's claim here would.

To see why Fourth Amendment claims like Smith's "merely anticipate" a future conviction—and do not represent the same threat to an existing prosecution as the due process case in *McDonough*—we can analogize Smith's claim to other Fourth Amendment claims. For example, we have noted that, under *Wallace*, a plaintiff's § 1983 claim based on an illegal stop accrues, and is not necessarily barred by *Heck*, when the stop occurs. *Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017). That claim could theoretically impugn aspects of the future prosecution, but it does not necessarily call the entire prosecution into doubt. The state may attempt to use evidence from an allegedly illegal stop in a future prosecution of the plaintiff, but even if a court agrees with the plaintiff that the stop was illegal, all that determination would undermine is the use of that evidence, not the prosecution's entire case. Likewise, Smith's claim can be separated from his overall prosecution. In fact, the district court noted that the allegedly fabricated evidence in Smith's case was not used at his trial, and nothing in his complaint suggests that it was. So *Heck*

would not require a court to bar Smith's claim if he had brought it immediately upon his release on bond.

We hold that even when charges remain outstanding, a Fourth Amendment claim for unlawful pretrial detention accrues upon the plaintiff's release from detention, and not upon the favorable termination of the charges against the plaintiff. Smith's claim is more like the claim in *Wallace* than the claim in *McDonough*. *See Manuel I*, 137 S. Ct. at 920 n.8 ("Nothing in the nature of the legal proceeding establishing probable cause makes a difference for purposes of the Fourth Amendment."). Smith's claim should accrue when the Fourth Amendment wrong ends. Different types of Fourth Amendment claims accrue at different times. In the search case, the illegal search is completed when that search occurs. *Mordi*, 870 F.3d at 708. But in the pretrial detention context here, the wrong ends when the detention ends. *Manuel II*, 903 F.3d at 669.

Now there is a concern about federal courts interfering with ongoing state criminal prosecutions by permitting § 1983 claims based on Fourth Amendment violations, even if those claims do not call into doubt the entire prosecution. *Wallace*, however, addressed this concern by pointing to the ability of courts to stay actions pending the resolutions of the state processes. 549 U.S. at 393–94. The Court in *McDonough* rejected this proposition for a due process claim. 139 S. Ct. at 2158. Yet, as discussed, a due process claim differs in kind from a Fourth Amendment claim. A due process claim attacks the whole prosecution, while the Fourth Amendment claim—whether about a search, arrest, or pretrial detention—can sometimes be severed from the rest of the prosecution. At bottom, the Court in *McDonough* did not explicitly overrule *Wallace's* holding that a Fourth Amendment claim is not barred by *Heck*

even if it could possibly affect a future prosecution. We will not do so, either.

## III

Because we hold that Smith's claim accrued upon his release from custody, we must reach his argument that his bond conditions constituted a seizure. If they did, then Smith was in custody until his acquittal, and his claim was timely. This court has previously reserved the question whether bond conditions can ever amount to a Fourth Amendment seizure. *See Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019). We now conclude that the standard bond conditions that Smith experienced did not constitute a continuing seizure.

A seizure of a person "can take the form of physical force or a show of authority that in some way restrain[s] the liberty of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (cleaned up). The common law distinguished between these two means of seizing a person. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). If physical force is applied, an individual need not actually be brought under the government's control to be seized, whereas when a seizure is accomplished by a show of authority, submission is required. *See Torres*, 141 S. Ct. at 1001. In either situation, the seizure is a specific event, and "we have repeatedly rejected the concept of continuing seizure." *Welton v. Anderson*, 770 F.3d 670, 675 (7th Cir. 2014) (internal quotation marks omitted); *cf. Torres*, 141 S. Ct. at 999 ("[A] seizure by force—absent submission—lasts only as long as the application of force.").

Smith cannot plausibly contend that his bond conditions amounted to a use of physical force. He does not suggest that any of those conditions involved government agents using any physical force against him. So to be a seizure, those

conditions must involve his submission to a show of authority. *See Torres*, 141 S. Ct. at 1001.[4] On this front, Smith argues that being required to attend court hearings and having to request permission before leaving Illinois amount to a seizure.[5]

Our opinion in *Bielanski v. City of Kane* is instructive on Smith's position. 550 F.3d 632 (7th Cir. 2008). There, this court ruled that an individual was not seized within the meaning of the Fourth Amendment when she was required to appear in court, request permission before leaving the state, and meet with an officer once a week. 550 F.3d at 642. This court concluded that the obligation to appear in court, on its own, could not constitute a seizure because "to hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim." *Id.* at 642; *see also Mitchell*, 912 F.3d, at 1017 ("We have misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a seizure for Fourth Amendment purposes.") (internal quotation marks omitted). This court viewed the travel restrictions as "a precursor to a possible seizure rather than a seizure itself" because the plaintiff had not shown that she had ever been denied permission to travel. *Bielanski*, 550 F.3d at 642. *Bielanski* does not control here because it did not

---

[4] Because of these specific requirements for an action to be a Fourth Amendment seizure, we reject Smith's argument that because he may have been considered "in custody" for purposes of habeas corpus relief while on bond, he must have been seized under the Fourth Amendment. In short, "there are important differences between modern habeas corpus and the protections of the Fourth Amendment." *Mitchell* 912 F.3d at 1016.

[5] As the district court correctly noted, Smith's other alleged burdens while on bond cannot constitute a seizure as they are "not unique to individuals on pretrial detention, nor are they conditions of bond imposed by court order."

concern bond requirements. Still, its reasoning is persuasive given the similarity of the restriction at issue in *Bielanski* to the requirements Smith raises here.

Like this court's view of the pretrial conditions in *Bielanski*, we are generally skeptical that standard bond conditions may constitute a Fourth Amendment seizure. The "quintessential seizure of the person" from the Founding to the present is an arrest. *Torres*, 141 S. Ct. at 995 (quoting *Hodari D.*, 499 U.S. at 624). Two key features of an arrest by a show of authority are that it involved an attempt to immediately control a person and a submission by the person to that authority, resulting in a severe loss of freedom of movement. *Torres*, 141 S. Ct. at 1001 ("[A] seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement."); *Hodari D.*, 499 U.S. at 626. An arrest is not the only possible seizure of a person, but this paradigmatic example provides grounds to determine what else constitutes a seizure. If we were to analyze this question at too high a level of generality, we would risk expanding the seizure concept beyond its original meaning. See *id*. at 998 ("Our precedent protects that degree of privacy against government that existed when the Fourth Amendment was adopted.") (internal quotation marks omitted)).

Requirements to appear in court and to request permission before leaving the state—Smith's bond conditions here—do not fit within the historical and judicially recognized framework of what constitutes a seizure. *See Nieves v. McSweeney*, 241 F.3d 46, 54–55 (1st Cir. 2001). The first is not a present show of authority but a future obligation to do something; it lacks the immediacy of a Fourth Amendment seizure. *Id*. Even if the mandate to appear in court could be considered a show of authority, a person would still need to appear there

to submit to that authority; so that requirement cannot constitute a seizure, much less an ongoing one. *See Anderson*, 770 F.3d at 675. Even more, if a duty to attend a hearing is a seizure, then large swaths of compulsory conduct—like jury duty and traffic hearings—would fall within the amendment's scope. *Mitchell*, 912 F.3d at 1017. Finally, even if Smith could be considered seized when he attended those court hearings, the duration of his seizure would be limited to the time he attended the hearing, as our court has rejected the idea that person can be continually seized and instead views a seizure as a fixed event. *Anderson*, 770 F.3d at 675. This does not help Smith because to prevail he needs to argue he was continually seized throughout his time on bond. As to a condition that a defendant request permission before traveling, the court in *Bielanski* properly considered this a "precursor to a possible seizure but not a seizure itself." 550 F.3d at 642. We agree: There is no restriction on the defendant's freedom of movement unless he is denied permission to leave.

Other circuits have had mixed reactions to Smith's argument that standard bond conditions constitute a Fourth Amendment seizure. Some have held that such conditions can constitute a Fourth Amendment seizure in principle and proceed case-by-case. *See, e.g.*, *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). The Third Circuit has gone as far as to hold that a requirement to appear in court is a seizure. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 367–68 (3d Cir. 2016). Notably, the court in *Black* based its conclusion that the bond condition the plaintiff challenged was a seizure on that circuit's acceptance of the concept of a "continuing seizure." *Id*. As noted above, this court has rejected a "continuing seizure" analysis. *See Wallace v. City of Chicago*, 440 F.3d

421, 429 (7th Cir. 2006). Other circuits have rejected Fourth Amendment challenges to standard bond conditions, while leaving open the possibility that certain other conditions might constitute a seizure. *See Nieves v. McSweeney*, 241 F.3d at 54–55; *Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004) *abrogation on other grounds recognized by Hardigree v. Lofton*, 992 F.3d 1216, 1222 (11th Cir. 2021).

We adopt a case-by-case approach on this issue, and we do not foreclose the possibility that a bond condition might constitute a Fourth Amendment seizure. A condition might involve the present and significant restriction of freedom that traditionally characterizes a Fourth Amendment seizure. But any challenged condition must fall within the traditionally-defined scope of what constitutes a seizure. Smith's requirements that he appear in court and request permission before travel, analyzed either separately or together, do not fall within that definition.

**IV**

Applying these principles to Smith's case, his claim accrued when he left detention and he was released on bond, March 29, 2014. So his filing of this case on July 18, 2018, was outside the two-year statute of limitations and thus untimely. We therefore AFFIRM the district court's dismissal of his complaint.[6]

---

[6] The district court concluded that Smith's conspiracy and *Monell* claims rose and fell with the timeliness of his Fourth Amendment claim. Because Smith has failed to offer any argument to the contrary, we affirm the district court's dismissal of those claims as well.