In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1226

MARK GEKAS,

*Plaintiff-Appellant,*

*v.*

PETER VASILIADES, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:10-cv-03066-RM-TSH — **Richard Mills**, *Judge.*

ARGUED FEBRUARY 10, 2016 — DECIDED MARCH 1, 2016

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, Mark Gekas ("Gekas"), filed suit against several individual members of the Illinois Department of Financial and Professional Regulation (hereinafter the "Department"), claiming they retaliated against him in violation of his constitutional First Amendment rights and were liable to him under the provisions of 42 U.S.C. § 1983. Specifically, Gekas sued Peter Vasiliades,

Frank Maggio, Mary Ranieli, John Lagatutta,[1] and John Krisko (collectively the "Defendants") for the claimed violations. The Defendants filed a motion for summary judgment, which the district court granted. Gekas appealed. For the reasons that follow, we affirm.

## I.  BACKGROUND

To understand the crux of Gekas' claims, we examine events that occurred nearly thirty years ago. Gekas is a licensed dentist practicing in Springfield, Illinois. In 1988, an investigator from the Department visited Gekas' office. As part of the investigation, Gekas met with Dr. Michael Vold ("Vold"), the Department's Dental Coordinator. Vold was concerned that Gekas had administered nitrous oxide to a child. He ordered Gekas to forward him information on all prescriptions that Gekas issued on a continuing basis. Gekas believed Vold mistreated him during the meeting.

Gekas contacted Deputy Governor Jim Riley for assistance regarding the situation with Vold. Deputy Governor Riley scheduled an informal hearing with the Department to discuss the matter. After the meeting, the Department imposed less onerous requirements on Gekas. Following this, there were no further confrontations between Gekas and the Department for about fourteen years.

In December 2002, a Department investigator, Peter Vasiliades ("Vasiliades"), raided Gekas' offices, with the assistance of several agents from the Federal Drug Enforce-

---

[1] The record is unclear whether his last name is spelled "Lagatutta" or "Lagattuta."

ment Agency. Gekas believed that Vold orchestrated the raid to get back at him for speaking to the Deputy Governor in 1988. Following the raid, Gekas participated in two informal meetings with the Department regarding the amount of prescription pills he had dispensed. During the first informal meeting, which may have occurred around August 2003,[2] Dental Board member, Frank Maggio ("Maggio"), aggressively questioned Gekas' lawyer. The meeting concluded with an offer to settle the charges against Gekas by imposing a six-month suspension combined with continuing education requirements. At the end of the meeting, Gekas believed that Vold was in the building and involved with the matter, despite the fact that Vold had been relieved of his position as Dental Coordinator by that time. The second informal meeting, which may have occurred in December 2003, resulted in a similar settlement offer. Gekas refused to accept either proposal.

On May 19, 2004, the Department's Medical Prosecutions unit issued a Rule to Show Cause why a cease and desist order should not be entered against Gekas based on the allegation that he was treating a specific patient (referred to as "K.Y.") for a medical condition and for prescribing controlled substances despite not being a licensed physician or surgeon. On May 26, 2004, Gekas answered the Department's Rule to Show Cause. On June 10, 2004, Department Director Fernando E. Grillo issued a cease and desist order against Gekas for the unlicensed practice of medicine based on his treatment of K.Y. The order stated that Gekas had to immediately cease and

---

[2] The record is devoid of exact dates regarding many of the events underlying Gekas' claims.

desist "the practice of medicine which includes, but is not limited to, treating K.Y. for a medical condition and prescribing controlled substances while not being a licensed Physician and Surgeon." On July 13, 2004, Gekas filed a complaint in the Circuit Court of Cook County seeking administrative review of the cease and desist order.

On June 16, 2004, Mary Doherty, the Department's Chief of Health Related Prosecutions, filed an administrative complaint against Gekas concerning the same allegations set forth in the cease and desist order. Specifically, the complaint alleged that Gekas had prescribed over 4,600 doses of Hydrocodone and Vicoprofen to K.Y. between January 5, 2001, and October 21, 2002. The complaint sought to have Gekas' dental license, controlled substance license, and dental sedation permit "suspended, revoked, or otherwise disciplined."

On July 11, 2003, Mary Ranieli replaced Vold as the Department's Dental Coordinator. Ranieli and Vold had a contentious relationship with each other prior to her replacing him. Ranieli testified that she never spoke with Vold about Gekas. Sometime in the summer of 2004, the Department refused to give Gekas credit for a continuing education course in which he was enrolled. Gekas contacted Ranieli regarding this refusal, and she initially assured Gekas that she would investigate the matter. She was later instructed by the Department's counsel not to speak with him. After Gekas proceeded to call Ranieli repeatedly throughout the summer, she finally answered in August 2004 and informed him that she could not speak to him. Ranieli also testified that she regularly did not speak with dentists subject to Department investigations until an investigatory conference had occurred.

Sometime in 2007, Gekas contacted Illinois State Senator Larry Bomke regarding his situation with the Department. State Senator Bomke agreed to help Gekas and scheduled a meeting with John Lagatutta ("Lagatutta"), the Deputy Director of the Department. However, Lagatutta had to cancel the meeting due to inclement weather. The meeting was never rescheduled.

On October 31, 2008, Department Director Daniel E. Bluthardt issued an order vacating the 2004 cease and desist order. On December 8, 2008, the Circuit Court of Cook County entered an agreed order declaring the 2004 cease and desist order null and void, and dismissing with prejudice Gekas' complaint for administrative review.

In December 2008, Gekas submitted a Freedom of Information Act ("FOIA") request to obtain the documents concerning the Department's administrative complaint against him. On December 30, 2008, the Department responded that the case was closed and no public documents were available. In February 2009, Gekas filed suit claiming that the Department improperly denied his FOIA request. The lawsuit was eventually dismissed by stipulation on April 2, 2010.

In April 2009 and July 2009, John Krisko ("Krisko"), a Chairman on the Illinois Board of Dentistry, issued subpoenas against Gekas. The subpoenas indicated that there was reasonable cause to believe that Gekas had violated the Illinois Dental Practice Act, and required him to submit certain records

for inspection. Krisko testified that he had never spoken with Vold prior to issuing the subpoenas.

On March 18, 2010, Gekas filed his federal suit against the Defendants. On February 8, 2011, Gekas filed a second amended complaint, which is the basis for this appeal. It alleges that the Defendants violated his First Amendment right to free speech because they retaliated against him by issuing the cease and desist order, filing the administrative complaint, raiding his office, and refusing to allow anyone at the Department to speak with him about his concerns. He claims that the protected speech involved included his 1988 conversations with the Deputy Governor, his 2007 conversations with State Senator Bomke, and his 2009 FOIA request.

The Defendants moved for summary judgment, which the district court granted on January 8, 2015. The district court assumed that Gekas "engaged in protected activity and suffered a constitutional deprivation," but still found that Gekas did not meet his *prima facie* burden because there was no evidence that any of the Defendants had a retaliatory motive. Instead, Gekas only presented "speculation or conjecture." Gekas appealed.

Gekas limits the issue on appeal to "whether the district court should have granted summary judgment on the issue of causation as it relates to the prosecution of Gekas that occurred between 2004 and 2008." His brief, however, addresses only whether the Defendants imposed the 2004 cease and desist order and filed the 2004 administrative complaint for retaliatory purposes. Since the retaliatory acts at issue both occurred in 2004, the only relevant speech that could form the basis

for Gekas' First Amendment retaliation claims are his 1988 conversations with the Deputy Governor. Therefore, we must determine whether summary judgment was appropriate for Gekas' claims that the Defendants imposed the 2004 cease and desist order and issued the 2004 administrative complaint to retaliate against him for his 1988 conversations with the Deputy Governor.

## II.  DISCUSSION

We review the district court's grant of summary judgment *de novo* in the light most favorable to Gekas; but, this "does not extend to drawing inferences that are supported by only speculation or conjecture." *Dawson v. Brown*, 803 F.3d 829, 832–33 (7th Cir. 2015) (citations and internal quotation omitted). Summary judgment is appropriate where the moving party shows that no genuine dispute of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The Defendants argue that Gekas' First Amendment retaliation claims are not timely under the statute of limitations. In addition, the Defendants argue that, regardless, Gekas has failed to present any evidence that there was a retaliatory motive underlying the cease and desist order or the administrative complaint. We will address both issues separately to determine whether summary judgment was appropriate.

### A.  Statute of Limitations

The statute of limitations for § 1983 claims in Illinois is two years. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 ILCS 5/13-202 and *Jenkins v. Vill. of Maywood*, 506

F.3d 622, 623 (7th Cir. 2007)). Federal law, however, governs the accrual date for § 1983 claims, which is when the plaintiff "knows or should know that his or her constitutional rights have been violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (citations and internal quotation omitted).

Generally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred. *See Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 535 (7th Cir. 2006) (finding plaintiff's First Amendment retaliation claim was not time-barred, to the extent that it was based on retaliatory acts that occurred within two years of when she filed suit); *see also Northern v. City of Chicago*, 126 F.3d 1024, 1025–26 (7th Cir. 1997) (finding plaintiff's First Amendment retaliation claim was time-barred under the two-year statute of limitations because the retaliatory acts began in 1988 and concluded by November 1991, yet the complaint was filed in November 1993). In this case, the retaliatory acts at issue are the June 10, 2004, cease and desist order and the June 16, 2004, administrative complaint. As a result, Gekas' complaint had to be filed at least by June 16, 2006. His March 18, 2010, complaint is clearly time-barred.

Gekas attempts to rescue his untimely claims by analogizing them to the tort of malicious prosecution. He broadly argues that any "retaliatory court action" does not accrue until the proceedings conclude in favor of the plaintiff, which in this case was either in October 2008, when the Department vacated the 2004 cease and desist order, or in December 2008, when the Circuit Court of Cook County entered the agreed

order declaring the cease and desist order null and void.[3]
Gekas relies primarily on *Parish v. City of Elkhart*, 614 F.3d 677
(7th Cir. 2010) to support his argument.

First Amendment retaliation claims and malicious prosecution claims are fundamentally different causes of action. We do not apply the statute of limitations analysis for malicious prosecution claims to this case merely because Gekas now characterizes his First Amendment retaliation claim on appeal as actually a claim for "retaliatory prosecution."[4]

Furthermore, even if we indulged Gekas' argument, his claims still fail under the analysis he requests this court to undertake. In *Parish*, we discussed the framework for determining when a cause of action requires a favorable disposition of a prior conviction before the plaintiff's claim accrues, pursuant to the Supreme Court's decisions in *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Wallace v. Kato*, 549 U.S. 384 (2007).

> If the claimed tort occurred and was completed
> before the conviction … the claims accrue immedi-
> ately upon the completion of the tort. If the claimed
> tort continued through, or beyond, the point of

---

[3] Gekas' statute of limitations argument in his reply brief focused solely on the 2004 cease and desist order, and did not discuss whether his claims based on the 2004 administrative complaint were timely. Thus, that issue is waived. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.") (citations omitted).

[4] At oral argument, Gekas' counsel conceded that there is no tort of retaliatory prosecution.

conviction, the court must ask whether the claims would directly implicate the validity of the conviction. If the claims would not directly implicate the validity of the conviction, the court should follow the standard discovery rule … . If the claim would directly implicate the validity of the conviction, then *Heck* … come[s] into play and the claim does not accrue until the conviction has been disposed of in a manner favorable to the plaintiff.

*Parish*, 614 F.3d at 683.

Although the 2004 cease and desist order is not a conviction, if we assume for purposes of this analysis that it is a conviction and that Gekas' First Amendment retaliation claims continued beyond the point of conviction (as would be the case with a claim for malicious prosecution), his claims are still time-barred because they do not implicate the validity of the 2004 cease and desist order. The Department issued the cease and desist order against Gekas for treating and prescribing drugs to K.Y. for a medical condition without possessing a proper physician and surgeon license. Gekas does not argue that he actually was treating a dental condition or that he did have the proper license. Rather, he claims that the Department only issued the order because it desired to retaliate against him for his 1988 conversations with the Deputy Governor. Therefore, Gekas did not have to wait for the order to be set aside before his claims accrued. *See Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010).

### B.  First Amendment Retaliation

Although Gekas' claims are time-barred, they also fail on their merits because he has produced no evidence of any retaliatory motive underlying either the cease and desist order or the administrative complaint. In order for Gekas to establish a *prima facie* § 1983 claim for First Amendment retaliation, he must show that: "(1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to retaliate." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (citations omitted).

Gekas argues that there was sufficient circumstantial evidence to infer a retaliatory motive. He also claims that since the Defendants have not explained why they took these actions against him, we must infer a retaliatory motive.

There are two problems with Gekas' argument. First, his claim that the Defendants have not explained why they took these actions is false. Both the 2004 cease and desist order and the 2004 administrative complaint state that they were issued because Gekas improperly prescribed K.Y. controlled substances to treat a medical condition. Gekas has offered no evidence to rebut this explanation.

Second, the circumstantial evidence in this case is woefully insufficient to withstand summary judgment. Gekas deliberately limited the scope of his appeal to events that occurred between 2004 and 2008. Yet, there are no allegations that Vasiliades, Maggio, or Krisko undertook any relevant actions against Gekas during this timeframe. In addition, there is no

evidence connecting Lagatutta or Ranieli to either the cease and desist order or the administrative complaint. In fact, the record indicates that Fernando E. Grillo issued the cease and desist order and Mary Doherty issued the administrative complaint, neither of whom are named defendants in this action.

Finally, Gekas has not shown that Ranieli's refusal to speak with him in August 2004 or Lagatutta's refusal to reschedule their meeting in 2007 were in any way related to his 1988 conversations with the Deputy Governor. Therefore, Gekas has failed to establish a *prima facie* case for First Amendment retaliation. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (finding that a plaintiff's speculation cannot create a genuine issue of material fact regarding retaliatory motive).

"As we have said before, summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation and citation omitted). Given Gekas' complete inability to connect the events that happened to him in 2004 to the conversations he had in 1988, his First Amendment retaliation claims cannot withstand summary judgment.

### III. CONCLUSION

Therefore, for the foregoing reasons, the judgment of the district court is AFFIRMED.