# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1708
_____

Daniel A. Rassier; Rita Rassier

*Plaintiffs - Appellants*

v.

John Sanner; Pam Jensen; Ken McDonald; Stearns County, Minnesota

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 16, 2021
Filed: April 30, 2021
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Daniel A. Rassier and Rita M. Rassier sued John L. Sanner, Pam Jensen, Ken P. McDonald, and Stearns County, Minnesota, asserting First Amendment retaliation, a derivative claim for municipal liability, and state law claims for defamation and intentional infliction of emotional distress. The district court[1]

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

dismissed these claims on summary judgment as time barred under the statutes of limitations. *Rassier v. Sanner*, 2020 WL 1082492 (D. Minn. Mar. 6, 2020). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Jacob E. Wetterling was kidnapped and murdered in 1989. He was abducted at the end of Rita Rassier's driveway. That night, her son Daniel Rassier reported to the Stearns County police that he witnessed a suspicious vehicle in the driveway around the time of the abduction. The murder remained unsolved until September 2016, when Danny J. Heinrich confessed to the crime.

In 2003, during the investigation, John Sanner became Stearns County Sheriff. Later that year, investigators identified a driver who turned around in the driveway on the night of the abduction. After determining the driver was not involved in the abduction, the police theorized that Jacob was not taken in a car. Daniel Rassier became dissatisfied with the investigation, questioning the "abduction-on-foot theory" and the effectiveness of the investigation. He repeatedly criticized the police in the years following the disappearance, including in television interviews.

In 2009, Patty L. Wetterling (Jacob's mother) collaborated with the police to record a conversation between herself and Daniel. Patty and the police hoped he would disclose information about the abduction. During a recorded conversation, Daniel criticized the police and Sanner.

The Rassiers allege that, learning of Daniel's criticisms, Sanner retaliated against him. Specifically, they allege that in retaliation, the police executed a search warrant on their property on June 30 and July 1, 2010. Investigators seized personal items from the Rassiers' home and removed truckloads of soil with heavy construction equipment. The Rassiers allege that during the search, Sanner privately told Daniel twice, "This is what happens when you talk."

Several news organizations live-covered the search. Days later, Sanner told a reporter that Daniel was "at least a person of interest" in the investigation—which Daniel immediately learned.

In 2017, the Rassiers sued Sanner, Pam Jensen (the lead investigator), Stearns County, and Ken McDonald.[2] The district court dismissed several claims that were based on allegedly unlawful searches. *See **Rassier v. Sanner***, 2017 WL 5956909 (D. Minn. Nov. 30, 2017). On summary judgment, the court dismissed the four remaining claims: 42 U.S.C. § 1983 First Amendment retaliation, a derivative claim for municipal liability, defamation, and intentional infliction of emotional distress. The court ruled that the section 1983 retaliation claim was barred by the six-year statute of limitations, and the defamation and intentional infliction of emotional distress claims were barred by the two-year statute of limitations. The court also denied equitable tolling because the Rassiers could not show that they diligently pursued their rights, or that an extraordinary circumstance prevented timely filing. The Rassiers appeal.

## II.

According to the Rassiers, their claims accrued in 2016, when Daniel first saw the unsealed affidavit for the search of the property and when Heinrich confessed to the murder. They assert that their 2017 suit is not barred by the statutes of limitations.

This court reviews de novo a grant of summary judgment. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." ***Id.***, *citing* **Fed. R. Civ. P. 56**.

---

[2]McDonald, an investigator for the Minnesota Bureau of Criminal Apprehension, was dismissed in the November 30, 2017 order, and is not a party to this appeal.

Section 1983 does not contain a statute of limitations; instead, courts apply the state statute of limitations for personal-injury torts. *See **Wallace v. Kato***, 549 U.S. 384, 387 (2007). Under Minnesota law, the Rassiers' section 1983 First Amendment retaliation claim has a six-year statute of limitations. **Minn. Stat. § 541.05**. *See **United States v. Bailey***, 700 F.3d 1149, 1153 (8th Cir. 2012) (the "statute of limitations on claims under 42 U.S.C. § 1983" is "six years in Minnesota"). Their state law claims of defamation and intentional infliction of emotional distress have a two-year statute of limitations under Minnesota law. **Minn. Stat. § 541.07(1)**.

A.

When a section 1983 claim accrues "is a question of federal law." ***Wallace***, 549 U.S. at 388. It is the "standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action." ***Id.*** (alteration in original), *quoting **Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California***, 522 U.S. 192, 201 (1997). In other words, accrual occurs when "the plaintiff can file suit and obtain relief." ***Id.***

For the retaliation claim here, the cause of action accrued when the retaliatory action occurred. *See **Graham Cty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson***, 545 U.S. 409, 419 (2005) (recognizing that "virtually all" state statutes of limitations, including Minn. Stat. § 541.07, begin "when the cause of action accrues—in retaliation actions, when the retaliatory action occurs."). *See also **Gekas v. Vasiliades***, 814 F.3d 890, 894 (7th Cir. 2016) ("Generally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred."); ***Johnson v. Johnson Cty. Comm'n Bd.***, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."); ***Venegas v. Wagner***, 704 F.2d 1144, 1146 (9th Cir. 1983) (where "illegal search and seizure is alleged, the conduct

and asserted injury are discrete and complete upon occurrence, and the cause of action can reasonably be deemed to have accrued when the wrongful act occurs.").[3]

Retaliation claims generally accrue when the retaliatory action occurs because damages result at that time. *See* **Wallace**, 549 U.S. at 391 (a "tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." (citation omitted)). The "cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* (citation omitted). Otherwise, "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id. See* **Henderson v. Ford Motor Co.**, 403 F.3d 1026, 1033 (8th Cir. 2005).

In their section 1983 claim, the Rassiers allege that Sanner retaliated against Daniel's criticisms by searching their property and publicly naming him a person of interest. Those retaliatory acts occurred in 2010. The Rassiers knew they were being retaliated against at that time. Their cause of action accrued then, beginning the six-year statute of limitations, which expired before this case was filed. *See* **Graham**, 545 U.S. at 419; **Gekas**, 814 F.3d at 894.

The Rassiers assert there is a genuine issue of material fact about when Daniel knew he was being retaliated against. They highlight several of his statements, arguing they show he was not sure of any retaliation until 2016, when he first saw the unsealed affidavit for the warrant to search his property:

> I think [seeing the affidavit] is the first time that I had proof. I had proof that, you know, something that was in writing that was—you know, that I can—I can use this to prove my case.

---

[3]On the facts here, this court need not address whether a section 1983 claim accrues when the plaintiffs had reason to know of the harm constituting the basis for their action. *See* **Gekas v. Vasiliades**, 814 F.3d 890, 894 (7th Cir. 2016); **Johnson v. Johnson Cty. Comm'n Bd.**, 925 F.2d 1299, 1301 (10th Cir. 1991). *See also* **White v. Garrison**, 70 F.3d 1276 (8th Cir. 1995) (per curiam) (unpublished).

Throughout this case, the Rassiers emphasized that Sanner admitted to the retaliation during the search, twice stating to Daniel: "This is what happens when you talk." The Rassiers knew then that their rights were violated. Their claims accrued then. *See Graham*, 545 U.S. at 419; *Gekas*, 814 F.3d at 894.

The Rassiers also believe they could not obtain relief on their claims until 2016, when Heinrich confessed to the murder. They assert that without the confession, they could not obtain relief because they could not prove Daniel's innocence. This argument fails. "Certainty is not the standard." *Henderson*, 403 F.3d at 1033 (rejecting the argument that a disability discrimination claim accrued when the plaintiff "had knowledge of all the facts related to the purported discrimination"). If it were, "the statute of limitations would never run—for even after judgment, there is no certainty." *Id.* (citations omitted). *See Wallace*, 549 U.S. at 391. The Rassiers' claims accrued in 2010, regardless of when they *believed* they had enough evidence to convince a judge or jury and obtain relief.[4]

## B.

The Rassiers' defamation and intentional infliction of emotional distress claims are also time barred. Under Minnesota law, these claims accrue on the date of the tortious act. *See Wild v. Rarig*, 234 N.W.2d 775, 794 (Minn. 1975) (en banc) ("a cause of action accrues when the defamatory matter is published"); *McGovern v. Cargill, Inc.*, 463 N.W.2d 556, 558 (Minn. Ct. App. 1990) (same); *Krause v. Farber*, 379 N.W.2d 93, 97 (Minn. Ct. App. 1985) (the statute of limitations for intentional infliction of emotional distress begins to run "on the date of the tortious act"). *See also Larson v. State*, 451 N.W.2d 213, 214 (Minn. Ct. App. 1990) (defamation and intentional infliction of emotional distress claims accrue when the events giving rise to the cause of action occur). The alleged tortious acts—Sanner

---

[4]Because the municipal liability claim derives from the retaliation claim, it is also untimely.

naming Daniel a person of interest and searching the Rassier property—occurred in 2010. The two-year statute of limitations passed before the Rassiers sued in 2017.

III.

According to the Rassiers, the district court erred by denying their request to equitably toll the statutes of limitations.

This court reviews de novo the district court's denial of a request for equitable tolling, and for clear error its underlying findings of fact. *Sisseton-Wahpeton Oyate v. United States Corps of Eng'rs*, 888 F.3d 906, 917 (8th Cir. 2018); *English v. United States*, 840 F.3d 957, 958 (8th Cir. 2016).

The standard to toll statutes of limitations is "necessarily a high one." *Miller v. Bd. of Regents of Univ. of Minnesota*, 2019 WL 4164898, at *2 (Minn. Ct. App. 2019), *quoting Sanchez v. State*, 816 N.W.2d 550, 561 (Minn. 2012). *See Wallace*, 549 U.S. at 394 (applying state law for tolling rules). Tolling "is an exception to the rule, and should therefore be used only in exceptional circumstances." *Anderson v. H-Window Co.*, 1999 WL 88953, at *4 (Minn. Ct. App. 1999), *quoting Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995).

Minnesota courts toll statutes of limitations when a party is "prevented from timely procedure in his suit by some paramount authority or by situations arising out of invincible necessity." *Sanchez*, 816 N.W.2d at 561 (internal quotations omitted) (citation omitted). They toll limitations "only when some factor completely outside the claimant's control prevented him from meeting a statutory deadline." *Id.* (citations omitted). The Supreme Court of Minnesota has described the "limited application of tolling" as "not dissimilar to the federal courts' application of equitable tolling in the context of the habeas corpus statute . . . ." *Id.*, *citing Holland v. Florida*, 560 U.S. 631, 649 (2010) (tolling the statute of limitations where a petitioner (1) "has been pursuing his rights diligently," and (2) "some extraordinary

circumstance stood in his way and prevented timely filing." (internal quotations omitted) (citation omitted)).

The Rassiers are not entitled to relief under either Minnesota or federal equitable tolling standards. They knew in 2010 that their rights were violated and that they were the subject of retaliation. As Daniel stated in his deposition:

> Q.    Can you think of any specific date that you would have said, "I'm certain now that that's why I'm being retaliated against"?
>
> **A.    July 1, 2010.**
>
> Q.    So, it didn't grow anymore after July 1?
>
> **A.    I was certain, but it just became more certain.**
>
> Q.    You were certain on July 1, 2010?
>
> **A.    Yes.**
>
> Q.    Did you have any proof at that time?
>
> **A.    Based on what Sanner said to me that day, and then his summing statement was, "This is what happens when you talk," that pretty much said it all.**

Daniel confirmed his certainty:

> Q.    When did you realize that you were being retaliated against?
>
> A.    **[I]t came very crystal clear when Sanner said to me . . . "This is what happens when you talk." And I go, "What did you say?" And he says it again, "This is what happens when you talk . . . ." And then it became even more clear when I went to his office maybe a week later. I called to talk to him. And it was crystal clear that if you're going to be critical of us like this, too bad for you.**

Daniel also confirmed writing a letter to several public officials, which said:

> In speaking with [Sanner] on July 1, 2010 in our farmyard, it became 100% clear that my family and I were being retaliated against for me being honest

with Patty Wetterling and informing her how "STUPID" law enforcement has been. **Sheriff Sanner SAID "This is what happens when you talk." He stated this exact statement twice** . . . .

Trying to qualify these statements, the Rassiers cite some later statements at the deposition. Regardless, the Rassiers lacked diligence in filing, which was not prevented by invincible necessity. Despite certainty of their claims, they did not file for more than six years.

Further, no factor completely outside the Rassiers' control prevented their filing. According to the Rassiers, the police's failure to identify a killer until 2016 was an extraordinary circumstance that prevented their filing. They assert that before a killer was discovered, they could not prove Daniel's innocence. But this is not the standard under Minnesota law. It is "not necessary that a party should know the details of the evidence by which to establish his cause of action . . . ." *Wild*, 234 N.W.2d at 795. Rather, the plaintiff must know that "a cause of action exists in his favor . . . ." *Id.* If the plaintiff has that knowledge, "it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim." *Id.* The lack of evidence on a killer's identity does not support equitable tolling, even if it diminished the likelihood of success.[5]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[5]The Rassiers argue for the first time on appeal that the statutes of limitations were tolled because Sanner, Jensen, and an assistant County attorney fraudulently concealed information from them. *See Sanchez*, 816 N.W.2d at 561. This court declines to consider this argument. *See Glover v. McDonnell Douglas Corp.*, 150 F.3d 908, 909 (8th Cir. 1998) ("arguments not presented to the court below will not be considered on appeal").