In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2469

BRIAN TOWNE,

*Plaintiff-Appellant,*

*v.*

KAREN DONNELLY, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-04097 — **Sharon Johnson Coleman**, *Judge.*

ARGUED FEBRUARY 16, 2022 — DECIDED AUGUST 11, 2022

Before RIPPLE, SCUDDER and KIRSCH, *Circuit Judges.*

RIPPLE, *Circuit Judge*. Brian Towne, the former State's At-
torney for LaSalle County, Illinois, defeated criminal charges
against him when an Illinois court ruled that the proceedings,
which had idled for about two years, violated his right to a
speedy trial. In the wake of that decision, Mr. Towne brought
this action under 42 U.S.C. § 1983. Pertinent to this appeal, he
alleged that State's Attorney Karen Donnelly, with the aid of
assistant state's attorneys and police investigators, had pros-
ecuted him in retaliation for his previous campaign for state's

attorney and, in so doing, had violated his First Amendment rights. The district court dismissed the complaint as untimely. The court ruled that the two-year statute of limitations for Mr. Towne's First Amendment retaliation claim had expired. The court explained that the limitations period had begun to run when he was indicted, not when he was acquitted.

Because our precedent establishes that a First Amendment retaliation claim such as Mr. Towne's accrues when the underlying criminal charge is brought, and because the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), has not disturbed that conclusion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Because this lawsuit was dismissed on the pleadings, we must take as true the following facts set forth in the operative complaint. *See Vergara v. City of Chicago*, 939 F.3d 882, 884 (7th Cir. 2019).

Mr. Towne served as the LaSalle County State's Attorney from 2006 until 2016. During his tenure, Mr. Towne encountered Karen Donnelly in three situations. First, Ms. Donnelly worked as a legal intern with the State's Attorney's Office in 2012. During the internship, she impermissibly accessed a file about the ongoing prosecution of her son, and Mr. Towne locked the file to prohibit her continued access to it. Second, a few years later, Ms. Donnelly applied for a position with the State's Attorney's Office, and Mr. Towne did not hire her. Finally, Ms. Donnelly ran against and defeated Mr. Towne in the 2016 election for State's Attorney.

Soon after taking office, Ms. Donnelly launched an investigation into Mr. Towne's conduct as State's Attorney. She claimed to suspect him of criminal acts during his tenure in office; Mr. Towne alleges that the inquiry "was wholly political and motivated by personal animosity towards" him.[1] Ms. Donnelly enlisted assistant state's attorneys and police officers for the City of Ottawa to help with an investigation. Over the next seven months, they interviewed witnesses, concealed exculpatory portions of the interviews, and fabricated inculpatory testimony.[2]

Based on this allegedly fabricated evidence, a grand jury indicted, and Mr. Towne moved to have a special prosecutor appointed in the case. The state court granted the motion, but the special prosecutor did not act on the charges against Mr. Towne. After ten months with no development, Mr. Towne moved to dismiss the charges on the ground that the prosecutorial inaction violated his right to a speedy trial. The trial court granted the motion in August 2019 and dismissed all criminal charges against him.

**B. District Court Proceedings**

In July 2020—nearly three years after Mr. Towne was indicted, and one year after the charges against him were dismissed—Mr. Towne filed this action under 42 U.S.C. § 1983 against Ms. Donnelly, the assistant state's attorneys, the officers involved in the underlying investigation, LaSalle County, and the City of Ottawa. The operative complaint alleged that the individual defendants violated Mr. Towne's First

---

[1] R.36 ¶ 40.

[2] *See id*. ¶¶ 41–50.

Amendment rights by prosecuting him in retaliation for his having opposed Ms. Donnelly in the 2016 election. The complaint further alleged that these defendants caused him to be held without probable cause in violation of the Fourth Amendment and subjected him to prosecution in violation of his Fourteenth Amendment right to due process. Finally, the complaint included allegations that the defendants had conspired to infringe Mr. Towne's constitutional rights and had failed to intervene to prevent constitutional violations.[3]

The defendants moved to dismiss the complaint. Relevant to this appeal, they submitted that Mr. Towne's First Amendment retaliation claim was untimely. According to the defendants, the two-year statute of limitations began to run upon his indictment and, therefore, had expired in September 2019—ten months before Mr. Towne filed this lawsuit. They also maintained that Mr. Towne's Fourth Amendment unlawful detention claim and due process claim were not actionable because he never was taken into custody and his criminal case never proceeded to trial.

In response, Mr. Towne argued that his First Amendment claim was timely under *McDonough v. Smith*, 139 S. Ct. 2149 (2019). In *McDonough*, the Supreme Court held that a Fourteenth Amendment due process claim based on fabricated evidence does not accrue until the proceedings are favorably terminated. Mr. Towne argued that his retaliation claim, like the due process claim in *McDonough*, challenged the validity of criminal proceedings. Therefore, he continued, the statute of limitations on his claim did not begin to run until he was

---

[3] The complaint also alleged state law claims of malicious prosecution, intentional infliction of emotional distress, conspiracy, and indemnification.

acquitted of the charges. As for his Fourth Amendment and due process claims, Mr. Towne contended that they were viable because his liberty was restricted while he was awaiting trial and because the criminal process was based on fabricated evidence.

The district court granted the defendants' motions and dismissed the case for failure to state a claim. Beginning with the First Amendment retaliation claim, the court explained that the claim accrued when the retaliatory act occurred, specifically in 2017 when Mr. Towne was indicted on false criminal charges. The district court was unpersuaded by Mr. Towne's argument that the Supreme Court's holding in *McDonough* applied to Mr. Towne's First Amendment retaliation claim. Similarly, with respect to Mr. Towne's Fourth Amendment claim, the district court concluded that the claim accrued when his detention ceased; this occurred when he was released on bond in September 2017. Consequently, this claim, too, was untimely. Regarding Mr. Towne's due process claim, the court concluded that Mr. Towne had not suffered a deprivation of liberty as a result of the fabrication of the evidence, and therefore his claim failed. Finally, the court dismissed the failure-to-intervene and conspiracy claims because they were contingent on the presence of an underlying constitutional claim, but none of Mr. Towne's constitutional claims were viable.[4]

---

[4] Having dismissed all of Mr. Towne's federal constitutional claims with prejudice, the court "decline[d] to exercise its supplement jurisdiction over Towne's state law claims of malicious prosecution, intentional infliction of emotional distress, indemnification, and conspiracy." R.64 at 9.

## II

## DISCUSSION

Mr. Towne appeals the district court's dismissal of his First Amendment retaliatory prosecution claim as untimely. Because the parties agree that the statute of limitations for § 1983 claims in Illinois is two years, *see* 735 ILCS 5/13-202; *Smith v. City of Chicago*, 3 F.4th 332, 335 (7th Cir. 2021), the sole issue on appeal is whether the limitations period began to run when the grand jury returned an indictment against Mr. Towne, as the district court held, or when the charges were dismissed, as he contends. If the latter view is correct, Mr. Towne's First Amendment claim, which he filed one year after his charges were dismissed, was timely. We review de novo a dismissal based on the statute of limitations. *Smith*, 3 F.4th at 335.

## A.

Generally, a claim under § 1983 accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).[5] At that point, the plaintiff "knows or should know that his or her constitutional rights have been violated." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016) (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). To determine when a litigant has a "complete and present" cause

---

[5] Although the statute of limitations is governed by state law, federal law governs the accrual date for such actions. *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016).

of action, we begin by examining the nature of the constitu-
tional right at stake. *McDonough*, 139 S. Ct. at 2155 (quoting
*Wallace*, 549 U.S. at 388). We also may look "to the common-
law principles governing analogous torts." *Id.* at 2156.

In the context of a First Amendment retaliation claim, we
have held that, "[g]enerally, the statute of limitations clock be-
gins to run … immediately after the retaliatory act occurred,"
*Gekas*, 814 F.3d at 894, so long as the plaintiff "knows or
should know that his or her constitutional rights have been
violated," *id.* (quoting *Hileman*, 367 F.3d at 696)). At least two
circuits have held that this general accrual rule for First
Amendment retaliation claims applies equally to First
Amendment retaliatory prosecution claims and that, conse-
quently, the cause of action typically accrues when the retali-
atory charges are brought. *See Smith v. Campbell*, 782 F.3d 93,
100 (2d Cir. 2015); *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th
Cir. 2011).[6] At that point, a plaintiff can state a complete claim
by alleging that (1) he participated in an activity protected by
the First Amendment; (2) he suffered a harm—that is, the
criminal charges—likely to deter future protected activity;
and (3) the charges were motivated by retaliation. *FKFJ, Inc.
v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). For a First
Amendment retaliatory prosecution claim, the plaintiff also

---

[6] Indeed we have reached this conclusion in a nonprecedential case, *see
Williams v. Davis*, 609 F. App'x 865, 867 (7th Cir. 2015), as have our col-
leagues in the Third and Sixth Circuits, *see Reardon v. Zonies*, 730 F. App'x
129, 132 (3d Cir. 2018); *Rapp v. Putman*, 644 F. App'x 621, 625 (6th Cir.
2016).

must plead a lack of probable cause supporting the charge. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006).[7]

The district court correctly determined that Mr. Towne's First Amendment retaliatory prosecution claim accrued when he learned that the defendants indicted him on charges that he believed to be retaliatory. According to Mr. Towne's complaint, he learned of the unlawful charges in September 2017, when the indictment was issued by a state's attorney with whom he had a history of conflict and personal animosity. At this point, Mr. Towne was aware that he had engaged in the protected activity of running for office and that the defendants harbored political and personal animosity toward him.

---

[7] Of course, the practical realities of a particular prosecution may inhibit an individual's ability to detect that a criminal charge is tainted by retaliatory animus. For instance, because of the secretive nature of a grand jury investigation, an individual might well be subjected to a retaliatory indictment, but not become apprised of the retaliatory motivations until well after the charges are brought. Or if a prosecutor is merely the cat's paw and brings charges at the instigation of another person who has retaliatory animus, the indicted individual may remain unaware of the retaliatory motivation for a considerable period of time. In those instances, the doctrines of equitable tolling or equitable estoppel may afford relief. "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if[,] despite the exercise of all due diligence[,] he is unable to obtain vital information bearing on the existence of the claim." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001). However, because we borrow a state's equitable tolling rules when we borrow its statute of limitations, *id*. at 596, the scope of relief available through equitable tolling may vary from state to state. Equitable estoppel, by contrast, is "a doctrine of federal law," *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016), and "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time," *Shropshear*, 275 F.3d at 595.

Indeed, Mr. Towne asserts that he moved for the appointment of a special prosecutor in part because he believed the prosecution was "highly problematic."[8] Thus, Mr. Towne had grounds to challenge the charges against him at the time those charges were brought.

**B.**

Notably, Mr. Towne does not argue that he did not recognize immediately the retaliatory nature of the charges against him. He appears to concede that, if his retaliation claim accrued when he knew or should have known that his rights were violated, the district court correctly dismissed his cause of action as untimely.[9] He therefore asks this court to "abandon" its current accrual rule and impose a favorable-termination requirement on First Amendment retaliatory prosecution claims.[10] He takes the view that the accrual rule set forth in *Gekas* cannot survive the Supreme Court's decision in *McDonough*.

In *McDonough*, the question before the Court was when the statute of limitations begins to run for a § 1983 action based upon allegations of fabricated evidence. The district court and the court of appeals had concluded that the limitations period "began to run when the evidence was used against [the plaintiff]." *McDonough*, 139 S. Ct. at 2153. The Supreme Court reached a different conclusion. Analogizing these claims to the tort of malicious prosecution, an element of which is a favorable termination of proceedings, the

---

[8] R.36 ¶¶ 36, 37, 60.

[9] *See* Appellant's Br. 5.

[10] *Id.*

Supreme Court held that due process claims based on fabri-
cated evidence do not accrue until the favorable termination
of the underlying criminal proceedings. *Id.* at 2156–58. The
Court further explained that

> malicious prosecution's favorable-termination
> requirement is rooted in pragmatic concerns
> with avoiding parallel criminal and civil litiga-
> tion over the same subject matter and the re-
> lated possibility of conflicting civil and criminal
> judgments. The requirement likewise avoids al-
> lowing collateral attacks on criminal judgments
> through civil litigation. These concerns track
> "similar concerns for finality and consistency"
> that have motivated this Court to refrain from
> multiplying avenues for collateral attack on
> criminal judgments through civil tort vehicles
> such as § 1983.

*Id*. at 2156–57 (citations omitted) (quoting *Heck v. Humphrey*,
512 U.S. 477, 485 (1994)).

Mr. Towne maintains that, for two reasons, *McDonough*
supports the view that *all* First Amendment retaliatory pros-
ecution claims do not accrue until the prosecution is favorably
terminated. First, he contends that, like a due process claim
based on fabricated evidence, a retaliatory prosecution claim
is akin to the common-law tort of malicious prosecution and
therefore also should include a favorable-termination require-
ment. Second, Mr. Towne asserts that the practical concerns
supporting the decision in *McDonough* apply equally to First
Amendment challenges to a state prosecution. We examine in
turn each of these arguments.

We are not convinced that a First Amendment retaliatory prosecution claim has the strong parallels to malicious prosecution that are present with a due process claim based on the fabrication of evidence. In comparing the evidence-fabrication claim to malicious prosecution, the Court drew upon its reasoning in *Heck*, 512 U.S. 477. *See McDonough*, 139 S. Ct. at 2156-57. In *Heck*, it had determined that the "common-law cause of action for malicious prosecution provides the closest analogy" to a due process claim for destruction and fabrication of evidence because "it permits damages for confinement imposed pursuant to legal process" and therefore necessarily impugns the entire legal process. 512 U.S. at 484. The Court explained, "[t]he essentials of McDonough's claim are similar: His claim requires him to show that the criminal proceedings against him—and consequent deprivations of his liberty— were caused by Smith's malfeasance in fabricating evidence. At bottom, both claims challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" *McDonough*, 139 S. Ct. at 2156 (footnote omitted) (quoting *Heck*, 512 U.S. at 484).

Under established law, however, to bring a retaliatory prosecution claim under the First Amendment, a plaintiff need only plead and prove an absence of probable cause for the underlying charge. *Hartman*, 547 U.S. at 265–66; *Williams v. City of Carl Junction*, 480 F.3d 871, 877 n.4 (8th Cir. 2007) ("Application of *Hartman* to defeat a plaintiff's claim does not require that a charge lead to a conviction, but merely that the charge be supported by probable cause."). Thus, the plaintiff's allegations do not necessarily impugn or implicate the entire prosecution. Additionally, a plaintiff need not assert or establish that he was confined or deprived of liberty as a result of the charges. *See, e.g., FKFJ, Inc.*, 11 F.4th at 585 (setting forth

elements of First Amendment retaliation claim). Indeed, in *Gekas*, we pointedly said that "First Amendment retaliation claims and malicious prosecution claims are fundamentally different causes of action." 814 F.3d at 894. *McDonough* itself noted that "the argument for adopting a favorable-termination requirement [is] weaker" in situations where there is not a "liberty deprivation occasioned by the criminal proceedings themselves." 139 S. Ct. at 2160.

Mr. Towne sees things differently. He submits that in *Hartman*, the Supreme Court already has analogized First Amendment retaliatory prosecution claims to malicious prosecution and therefore set the groundwork for requiring favorable termination. We cannot accept this argument. In *Hartman*, the Supreme Court observed that it "could debate whether the closer common-law analog to retaliatory prosecution is malicious prosecution (with its no-probable-cause element) or abuse of process (without it)." 547 U.S. at 258. The Court declined to engage in that debate, however. Instead, it adopted a no-probable-cause requirement for retaliatory prosecution claims because these claims require that retaliation be the "but-for cause" of the charge. *Id*. at 260; *see also id.* at 259 ("It is, instead, the need to prove a chain of causation from animus to injury … that provides the strongest justification for the no-probable-cause requirement … .").

To be sure, the events that led to the lawsuit in *McDonough* and those underlying Mr. Towne's claim are undeniably similar because the basis for both is a prosecution that is based on false evidence and not supported by probable cause. Thus, the language in *McDonough* asserting that "[t]here is not 'a complete and present cause of action' to bring a fabricated-evidence challenge to criminal proceedings while those criminal

proceedings are ongoing," 139 S. Ct. at 2158 (quoting *Wallace*, 549 U.S. at 388), at first glance, might seem to apply with equal force to claims like Mr. Towne's. There is, however, an important difference between Mr. Towne's claim and the one in *McDonough*: Mr. Towne claims a violation of the First Amendment. Such a claim—unlike an evidence-fabrication claim under the Due Process Clause—does not necessarily focus on the entire prosecution, and, in that respect, is not akin to malicious prosecution with its favorable-termination requirement. *See Smith*, 782 F.3d at 100 (noting that, in arguing for a favorable-termination requirement, the plaintiff had "mistakenly conflate[d] the Fourth Amendment tort of malicious prosecution with the First Amendment tort of retaliation" and further observing that "[t]hese two kinds of claims are not subject to the same standards").

Mr. Towne also submits that the pragmatic concerns motivating the favorable-termination requirement in *McDonough* are equally present in the context of a First Amendment retaliatory prosecution claim. For instance, litigants who wish to challenge an ongoing prosecution as retaliatory "could face an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *McDonough*, 139 S. Ct. at 2158. The latter choice involves undesirable risks of "tipping his hand as to his defense strategy, undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context." *Id*. Because of these concerns, Mr. Towne maintains, a litigant should not be required to file his claim before the proceedings against him are completed in his favor.

We agree with Mr. Towne that many of the practical concerns expressed in *McDonough*, 139 S. Ct. at 2158–59, apply also to First Amendment retaliatory prosecution claims that challenge ongoing state prosecutions. Nevertheless, we are not convinced that these interests justify extending the favorable-termination requirement to retaliatory prosecution claims arising under the First Amendment.

Requiring a favorable termination in a First Amendment retaliatory prosecution claim because of these pragmatic concerns would narrow First Amendment protections. As the law now stands, a First Amendment claim accrues when a person is prosecuted without probable cause in retaliation for protected activity, even if evidence is later discovered to support the charge and lead to conviction. *See Hartman*, 547 U.S. at 265–66. Perhaps for this reason, Mr. Towne points to no circuit that imposes such a favorable-termination requirement on retaliatory prosecution claims. On the other hand, as discussed earlier, several circuits have concluded that First Amendment retaliatory prosecution claims accrue when the retaliatory charges are brought.[11]

Further, if several of the concerns about parallel litigation become acute in a particular case, those concerns can be assuaged through the prudent use of stays and abstention. *See Wallace*, 549 U.S. at 393–94 ("[I]t is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."). This practice is preferable to delayed accruals in situations like this one, where the action impugns an

---

[11] *See supra* p. 7.

indictment as without probable cause but not necessarily the entire prosecution. *See id.* at 393.

## C.

In his complaint, Mr. Towne also alleged that he was subjected to pretrial detention without probable cause in violation of the Fourth Amendment.[12] The district court dismissed that claim as untimely because "a claim for unlawful pretrial detention accrues when the detention ceases," and Mr. Towne was "released on bond in September 2017," more than two years before he filed his complaint.[13] In his brief before this court, Mr. Towne conceded that, under governing law, his "Fourth Amendment claim accrued more than two years prior to the initiation of his civil lawsuit and is outside the statute of limitations."[14]

Following oral argument, the Supreme Court handed down its decision in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), in which it "flesh[ed] out" the favorable termination requirement for a Fourth Amendment malicious prosecution claim. *Id.* at 1335. Specifically, the Court held that, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Id.* At Mr. Towne's request we ordered supplemental briefing by the parties on "the

---

[12] *See* R.36 ¶¶ 86–91.

[13] R.64 at 6 (quoting *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015 (7th Cir. 2019)).

[14] Appellant's Br. 10.

applicability, if any, of *Thompson v. Clark*, 142 S. Ct. 1332 (2022), to the resolution of this case."[15]

Mr. Towne contends that this court should vacate the dismissal of his Fourth Amendment claim in light of *Thompson*. He ultimately asks this court to take three actions: (1) to "overrule its prior holding that there is no cognizable claim for federal malicious prosecution," (2) to "hold that a Fourth Amendment claim for unreasonable pretrial detention," like a Fourth Amendment malicious prosecution claim, also "accrues upon favorable termination of those charges," and (3) to reverse the dismissal of his Fourth Amendment claim and remand for further proceedings.[16] According to Mr. Towne, we should consider his arguments, despite the concession in his opening brief, because *Thompson* was issued after oral argument, and "[a] party does not waive an argument when, under then-existing precedent, it had no reason to offer [it]."[17]

We cannot accept Mr. Towne's contention. First, we previously have held litigants—even criminal defendants—to their concessions in briefs despite intervening developments in the law beneficial to them. For instance, in *United States v. Cunningham*, 405 F.3d 497 (7th Cir. 2005), the defendant, in his opening brief, had "conceded that the district court properly increased his base sentence for the use of a computer and for the age of the victim" based on judge-found facts. *Id.* at 503-04. Following oral argument, the Supreme Court handed down its decision in *Blakely v. Washington*, 542 U.S. 296

---

[15] App. R.40.

[16] Appellant's Supp. Br. 9.

[17] *Id.* at 2.

(2004).[18] Cunningham then filed a supplemental brief in which he sought to challenge the district court's sentencing determinations on the basis of *Blakely*. We concluded, however, that "because Cunningham [had] waived his right to contest the district court's imposition of separate two-level enhancements for the victim's age and for Cunningham's use of a computer well before the Supreme Court's decision in *Blakely v. Washington*, we need not consider whether they were improper in light of that decision." *Id.* at 504.

Moreover, the Supreme Court granted certiorari in *Thompson* in March 2021, almost eight months prior to the date on which Mr. Towne filed his opening brief. The granting of certiorari served to alert litigants of a potential change in the law. *Cf. Ortiz-Santiago v. Barr*, 924 F.3d 956, 964 (7th Cir. 2019) (refusing to relieve a litigant of a forfeiture when "there were signs that a meritorious argument could be raised"). Thus, to the extent that *Thompson* has any bearing on Mr. Towne's Fourth Amendment claim, he had notice of that long before making his concession in his opening brief.

## CONCLUSION

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

AFFIRMED

---

[18] In *Blakely v. Washington*, 542 U.S. 296, 305 (2004), the Court held that a state judge's imposition of an "exceptional" sentence violated the Sixth Amendment because the enhanced sentence was based on judge-found facts.