**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 9, 2022[*]
Decided November 17, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 22-1809

| | |
|---|---|
| PETER J. LONG, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 21-C-1210 |
| JOHN F. MATZ, et al., <br> *Defendants-Appellees.* | William C. Griesbach, <br> *Judge.* |

**O R D E R**

Peter Long sued Wisconsin jail officials under 42 U.S.C. § 1983, raising two claims about COVID-19. First, he says that, although the staff quarantined new inmates, gave them cleaning supplies, and later tested them to protect them from the virus, the Constitution required that the staff do more. Second, he accuses the staff of transferring

---

[*] The appellees were not served with process and have not participated in this appeal. We have agreed to decide the case without oral argument because the appellant's brief and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

him to another facility in retaliation for complaining about the level of protection. The district court dismissed his complaint, correctly concluding that he failed to allege any constitutional violation; thus we affirm.

We recount the facts alleged in the complaint, accepting them as true. *Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 819 (7th Cir. 2022). Long was housed at Winnebago County Jail from 2020 through early 2021, apparently on charges that he violated terms of his extended supervision. When he arrived, he was quarantined alone in a cell for two weeks—as were all new inmates during the COVID-19 pandemic. Afterward, he moved to a pod with several dozen inmates, all of whom had successfully completed a two-week quarantine. The jail began to test inmates for COVID-19 in November 2020, when an inmate in the pod was hospitalized with an infection. Afterward, it tested all inmates and staff. Long eventually tested positive for COVID-19 and experienced joint pain, dizziness, and nausea for over two weeks. When about one-third of the jail's inmates also tested positive, the jail began conducting weekly tests of its employees.

All inmates were required to clean their housing units and the restrooms. Jail staff provided the inmates with antibacterial cleaning supplies but not products containing bleach, which Long wanted, believing that it would kill both the COVID-19 virus and bacteria. Two officials denied his request and refused to give him grievance forms. One explained that bleach was banned because the jail regarded it as a safety and security hazard; another said that "[n]o constitutional rights were violated."

Long was transferred to a prison in 2021 when his supervision was revoked. He says that, although other inmates were ahead of him on the transfer list, he was moved to the top in retaliation for his complaints about the jail's response to the pandemic.

Long next turned to federal court. He asserted that the defendants violated his constitutional rights by failing to implement COVID-19 testing before November 2020, refusing to provide him with bleach, denying him access to grievance forms, and retaliating against him for complaining by moving him to the top of the transfer list. A magistrate judge allowed Long to amend his complaint to specify who violated his rights and how. After Long did so, a district judge handled the case because not all parties had provided consent to magistrate judge jurisdiction.

The district judge dismissed Long's amended complaint with prejudice. *See* 28 U.S.C. § 1915A. First, the court ruled that Long pleaded himself out of court on his claim that the jail's COVID-19 response was unreasonable, because he alleged that the

staff quarantined new inmates and began testing staff weekly after an outbreak occurred. Second, the court concluded, the jail's staff did not violate Long's rights by denying his requests for bleach, because he did not plausibly allege that non-bleach cleansers exposed him to an unreasonably high risk of contracting COVID-19. Third, the court ruled that Long did not have a constitutional right to grievance forms. Finally, regarding the retaliation claim, the court explained that Long had not alleged that his transfer would likely deter an ordinary inmate from complaining about jail conditions.

On appeal, Long first raises an unfounded procedural challenge. He contests his case's transfer from the magistrate judge to the district judge. But Long did not serve any of the defendants with process, and they never consented to allowing a magistrate judge to enter judgment. Non-served defendants are "parties" under the Magistrate Judges Act, *see* 28 U.S.C. § 636(b)–(c); FED. R. CIV. P. 73(b)(1), and they must consent to allowing a magistrate judge to issue a final judgment. *Coleman v. Labor and Indus. Review Comm'n of Wis.*, 860 F.3d 461, 470–71 (7th Cir. 2017).

Next, Long contends that he adequately stated claims for relief. We review de novo the dismissal of a complaint under 28 U.S.C. § 1915A, drawing all reasonable inferences in Long's favor and construing his pro se submission liberally to determine if he pleaded a plausible claim. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED R. CIV. P. 8(a)(2).

We begin with his claim that the jail unreasonably failed to protect inmates before the jail's COVID-19 outbreak in November 2020 by not testing them for the virus or supplying antiviral cleansers, like bleach, which Long says that the CDC recommended. When a pretrial detainee complains about conduct at a jail, the claim arises under the due-process clause, and we ask whether the conduct was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 392 (2015). The preventative measures that Long alleges that the defendants used to address the risks of the virus refute an inference that their measures were objectively unreasonable: Before the jail even had a COVID-19 outbreak, staff quarantined new inmates for two weeks before housing them together, supplied them with antibacterial cleansers, and required that they use them. After the outbreak occurred, they tested inmates and, each week, tested those people—the staff—who left the jail and could upon reentry infect others. Even if other, potentially costlier measures, such as testing inmates before an outbreak materialized and supplying them with bleach, might have been superior, due process does not require superiority, just reasonableness, which occurred here. Because we conclude that the defendants behaved reasonably, we need not and do not decide

whether, and if so when, the Constitution requires public officials to take steps to reduce the risk of infection within a prison or jail.

Long next argues that the defendants violated his due-process rights by preventing him from accessing the jail's grievance forms. But Long does not have a liberty interest in a jail's grievance procedures. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). A purported refusal to supply grievance forms may excuse inmates from the need to exhaust administrative remedies, but it does not violate constitutional rights. *Id.*; *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008).

That brings us to Long's claim that the defendants violated his First Amendment rights by accelerating his transfer to prison (after his supervision was revoked) to punish him for complaining about the jail's COVID-19 response. Long has not presented a valid claim if the alleged punishment is unlikely to deter ordinary inmates from raising similar complaints. *See Towne v. Donnelly*, 44 F.4th 666, 671 (7th Cir. 2022). A transfer alone is not adverse enough to deter an ordinary inmate from protected speech. *Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020). And Long did not allege that his prison—to which he was eventually going anyway after the revoked supervision—was worse than his jail.

Finally, Long argues that the district court should have offered him a second chance to amend his complaint. But Long did not ask to amend his complaint a second time, and so the court was not required to offer an unsolicited, second chance for him to do so. In any case, Long does not tell us how he would alter his complaint to cure its deficiencies. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) (court may dismiss complaint with prejudice when plaintiff fails to explain how proposed amendment would cure deficiencies).

                                                                                              AFFIRMED